(78 South. 571)

No. 22934.

PUYOULET v. GEHRKE.

In re GEHRKE.

(April 1, 1918. Rehearing Denied April 29, 1918.)

*(Syllabus by the Court.)*

1. ESCHEAT ⟨⟩7—VACANT SUCCESSION—SEISIN OF STATE.

Where a vacant succession falls to the state, the maxim of "Le mort saisit le vif" does not apply, and the state is not entitled to the seisin of the property depending upon such succession, nor does the state succeed to the deceased or become eo instanti vested with the ownership of such property.

2. ESCHEAT ⟨⟩7—VACANT SUCCESSION—SALE —CLAIMS OF HEIRS OR CREDITORS.

Property depending upon a vacant succession falling to the state remains in such vacant succession until sold, and then the proceeds of sale become the property of the state, subject, however, to the claims of the creditors or heirs of the deceased, if any appear.

3. TAXATION ⟨⟩631 — TAX SALE—RIGHTS OF PURCHASER.

Where property of a vacant succession, which had been forfeited and sold to the state for nonpayment of taxes due prior to December 31, 1879, was sold in 1894 by the state under the provisions of Act No. 82 of 1884, the purchaser at such sale who complied with the requirements of said act and paid all taxes since due on said property acquired a good title as against the state.

Action by Pierre Puyoulet against Mrs. Alfred Gehrke. Plaintiff's demand was refused in the district court; judgment of the court of appeal reversed the judgment below, and defendant applies for certiorari or writ of review. Judgment of Court of Appeal reversed, and judgment of district court reinstated and affirmed.

See, also, 136 La. 402, 67 South. 194; 141 La. 935, 75 South. 998.

Benjamin Ory, of New Orleans, for relatrix. A. D. Danziger and E. J. Meral, both of New Orleans, for respondent.

LECHE, J. On August 15, 1916, defendant bound and obligated herself in writing to sell to plaintiff three certain lots of ground situated in the city of New Orleans, for a consideration of $3,200, cash, of which amount she acknowledged to have received $320. Plaintiff accepted the above proposal of sale subject to an examination of defendant's title to the property.

The Louisiana Abstract & Title Guarantee Company was employed by plaintiff, and that company, after examining the said title, disapproved the same. The present suit was then instituted by plaintiff to recover double the amount deposited by him with defendant as part of the purchase price, on the ground that defendant's title was suggestive of future litigation and neither clear nor unincumbered.

The district court, being of the opinion that the title tendered by defendant was good and valid, refused plaintiff's demand, but on appeal to the Court of Appeal that judgment was reversed. The findings of the Court of Appeal are now before us for review, and we are asked to reverse the ruling of that court and to reinstate the judgment of the district court.

The admitted facts are as follows: The property was acquired on June 1, 1833, by Isaac Warbeck, who died June 11, 1836; Warbeck's succession was opened, but never was finally closed; Joseph Bres bought the property at tax sale June 25, 1894, for the unpaid taxes of 1876, 1877, and 1878, under an assessment in the name of Isaac Warbeck, the tax collector, acting under Act 82 of 1884; defendant acquired the property at sheriff's sale on December 27, 1900, under an execution issued on a judgment against Bres; the only claim made to the property

on behalf of the state of Louisiana was by Flanagan, administrator, as appears in the decision of this court in the case of Flanagan v. Gehrke, 136 La. 402, 67 South. 194; defendant has paid all taxes assessed against said property since her acquisition of the same.

The record further shows that defendant has been in the quiet, open, and undisturbed possession of said lots ever since she bought them. It seems also to be undisputed that Warbeck left no heirs and that his succession is vacant.

Defendant maintains that her title is valid and pleads in support thereof estoppel, and the prescriptions of 3, 5, 10, and 30 years against the state of Louisiana, the only apparent adverse claimant.

## Opinion.

Plaintiff refuses to accept the title tendered by defendant on the ground that at the death of Warbeck the property devolved upon the state of Louisiana, and that the ownership of the state has never been divested. He rests his contention on the case of Cordill v. Quaker Realty Co., reported in 130 La. at page 933, 58 South. 819. It appears that a suit was brought by Peter J. Flanagan, acting as public administrator for the parish of Orleans, in order to recover the property in dispute and to have the ownership thereof declared to be in the state. That action was petitory in character, and we held that the public administrator had no authority to institute petitory actions in behalf of the state of Louisiana, and dismissed the suit for want of capacity on the part of plaintiff. See 136 La. 402, 67 South. 194.

[1] The nature of the title which the state may have to this property is therefore again presented to us in another form in this controversy. It is too plain to admit of discussion that if at the death of Warbeck in June, 1836, the full and perfect ownership of the property became by effect of law vested in the state of Louisiana, all the assessments and sales for taxes subsequently made by the tax-collecting department of the state were absolute nullities, and that the pleas of estoppel and prescription advanced by the defendant can be of no avail. It is not pretended that any part of the public domain could be divested from the state in any such manner. It is only as against titles acquired by the state in proceeding to enforce the payment of taxes that estoppels and pleas of prescription have ever been held to apply.

The law provides in C. C. art. 485, that the successions of persons who die without heirs, or which are not claimed by those having a right to them, belong to the state. Article 929 is to the same effect. Strictly speaking, the state acquires, not as heir, but in default of lawful relations, or of a surviving husband or wife, or acknowledged natural children. But even if the state be considered an heir, that heirship, like that of the surviving husband or wife, or his or her natural children, is, according to articles 878 and 917, irregular. The doctrine of "Le mort saisit le vif" does not apply to irregular heirs. Succession of Allen, 44 La. Ann. 801, 11 South. 42; Succession of Barber, 52 La. Ann. 963, 27 South. 363. The only persons who succeed eo instanti to the deceased are, under the terms of article 940, his legal or testamentary heirs and universal legatees.

From these provisions of our law it is apparent that the seisin which is effected by the operation of law in favor of the legal or testamentary heir or the universal legatee does not attach in favor of the state. In other words, the state is not considered as succeeding to the deceased from the instant of his death. Other provisions of the Code direct the manner in which irregular heirs, who are not invested with the seisin, must demand the possession of the property of the

succession before they can obtain the same. But these provisions make no mention of the state. The articles of our Code (925 and 930) provide for the manner in which natural children and the surviving husband or wife shall be put in possession of the effects of successions falling to them, but there is no similar provision in the Code in favor of the state. The corresponding article (724) of the Code Napoléon, on the other hand, recognizes the right of the state to be placed in possession of the effects of a succession which devolves upon it. Considering that the framers of our Code were guided in their labors by the provisions of the Code Napoléon, it must then be inferred that they purposely refrained from giving such right of action to the state. The question that next arises is, how then is the state to get possession of succession property which, under the terms of articles 485 and 929 of the Louisiana Code, devolves upon it in default of legal heirs? The answer is to be found in the articles 1169, 1196, and 1197, which say that after the expiration of one year from the appointment of the curator of the vacant succession the property should be sold at public auction and the proceeds paid into the hands of the treasurer of the state.

[2] It is evident that the legislative authority never contemplated that succession property which might devolve upon the state in default of legal heirs should be owned and possessed in kind by the state. On the contrary, it is manifest that it is only after such property has been converted into money that the state can obtain full control over it and exercise the right of ownership. It is against the policy of our law to permit the state to own in kind property which may only be adapted to private purposes, or to permit it to compete with its citizens in the acquisition of property which by its nature cannot be devoted to public use. That the state acquires the proceeds and not the property of vacant successions is fully attested by the articles of all our Constitutions on this particular subject. Whilst the Constitution of 1812 makes no mention of successions devolving upon the state in default of legal heirs, the Constitution of 1845 (article 135), that of 1852 (article 137), that of 1864 (article 144), that of 1868 (article 139), that of 1879 (article 229), and those of 1898 and 1913 (article 254), in creating a free public school fund, uniformly recognize as accruing to the state, not the property, but the proceeds of vacant estates falling under the law to the state of Louisiana. In the Succession of Kate Townsend, 40 La. Ann. 66, 3 South. 488, although the precise issue discussed here was not presented to the court, the final clause of the decree orders that:

"The residue of the property of said succession be turned over and paid into the treasury of the state of Louisiana to be therein deposited and further dealt with according to law."

The court clearly uses the word "property" in the sense of proceeds of the property, as the property itself, whether it was movable or immovable, was not subject to deposit in the vaults of the state treasury.

Our conclusions are that under articles 485 and 929 of the Civil Code, construed in connection with articles 878, 917, and 940, the state does not succeed to the deceased in vacant successions, and therefore does not eo instanti become vested with the ownership of property depending upon such successions; that by article 1196 the state may only acquire the custody and control of the funds arising from the sale of property of vacant successions; and that by article 1204 "these funds may be made use of" for the purposes mentioned in article 254 of the Constitution, "but their reimbursement is provided for and guaranteed on the faith of the state, so that the heirs who present themselves meet no delay in receiving them."

We therefore further conclude that the ownership of the property involved in this controversy never was vested in the state of Lou-

isiana, but remained in the succession of Warbeck, and that if the state ever acquired any title to that property it could only have done so by forfeiture or by sale for non-payment of taxes.

We appreciate that these conclusions are in conflict with those expressed in the case of Cordill v. Quaker Realty Co., 130 La. 933, 58 South. 819, but the defense urged in the present suit was not called to our attention in that case.

Believing, then, that the property which defendant bound herself to sell to plaintiff did not devolve upon the state, and that it continued, after the death of Warbeck, to belong to his succession, the other issues here involved present little difficulty.

[3] The sale of June 25, 1894, to Joseph Bres, made by authority of the state, under Act 82 of 1884, so far as the record shows, was legal and valid and divested the state of any title which it might have acquired at previous tax sales. The plaintiff does not attack the regularity of this sale, but only questions its binding effect as against the state on the grounds which have already been disposed of, and there is then no necessity of considering the pleas of estoppel and prescription.

For these reasons the judgment of the Court of Appeal for the parish of Orleans is avoided and reversed, and that of the district court is reinstated and affirmed.