edge of the offense was made known to the prosecuting officer.

It is therefore ordered that the judgment and sentence appealed from be set aside, and that the defendant be discharged.

<hr>

(97 South. 664)

No. 25367.

## Succession of HERDMAN.

(June 30, 1923. Rehearing Denied Oct. 2, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Death** ⬳1 — **Persons presumed still alive after lapse of 35 years.**

Under Rev. Civ. Code, art. 70, there is no presumption of death unless a century has elapsed since one's birth, and after lapse of only thirty-five years since deceased left his wife and children, in a foreign land, they are presumed to be still alive.

2. **Pleading** ⬳8(2) — **Allegation that aliens barred from taking as legatees held a conclusion.**

Allegation, in proceeding by state to establish ownership of estate of decedent, that his wife and daughters being Russian aliens were barred from taking as legatees in absence of treaty with Russia, was not allegation of well-pleaded fact, but a conclusion of law.

3. **Aliens** ⬳9, 14—**Entitled to inherit.**

There is nothing in the laws of Louisiana excluding aliens from inheriting any kind of property, real or personal.

4. **Aliens** ⬳12(4)—**Statute as to donations to "strangers," when laws of their country do not prohibit similar dispositions, held inapplicable to heirs.**

Civ. Code, art. 1490, providing that donations inter vivos and mortis causa may be made in favor of stranger, when laws of his country do not prohibit similar disposition in favor of citizens of Louisiana, has no application to forced or legal heirs, who cannot be considered as "strangers."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Stranger.]

5. **Aliens** ⬳12(1)—**State laws permitting inheritance applies in absence of treaty.**

There being no treaty on the subject between Russia and the United States, the succession laws of Louisiana permitting aliens to inherit are valid and applicable.

6. **Escheat** ⬳6—**Failure to allege that decedent died without heirs held fatal.**

Under Civ. Code, arts. 485, 929, failure of state's petition, in proceeding to establish ownership of estate of decedent or to compel deposit of assets in state treasury, to allege that decedent died without heirs, was fatal to cause of action.

7. **Escheat** ⬳7—**State can only claim proceeds and not ownership.**

Under Rev. Civ. Code, arts. 1196, 1204, the state has right to claim proceeds and not ownership of property of vacant successions.

8. **Appeal and error** ⬳329—**Intervention filed in appellate court not considered.**

Supreme Court has no original jurisdiction to entertain intervention filed in that court in the first instance, and, in proceeding by the state to establish ownership of estate of decedent, will not consider petition of public administrator for remand in order that he may be appointed dative testamentary executor for purpose of reducing estate to cash and depositing net proceeds in state treasury for benefit of public school fund.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Proceeding by the State, through the Attorney General, against the succession of Ike Herdman. From a judgment against the State it appeals, and the Public Administrator of the City of New Orleans files a petition in intervention. Intervention dismissed, and judgment affirmed.

A. V. Coco, Atty. Gen., and Paul A. Sompayrac, Asst. Atty. Gen., for the State.

Alfred D. Danziger, of New Orleans, for appellee executor.

Harry P. Sneed, of New Orleans, for appellees legatees.

LAND, J. This is a proceeding in which the state of Louisiana, through the Attorney General, seeks to obtain a judgment decreeing the state to be the owner of the estate of

one Ike Herdman, deceased, and, in the alternative, plaintiff prays that judgment be rendered in favor of the state, ordering the executor to deposit with the state treasurer, or in the state treasury, the assets of the succession of Ike Herdman.

Plaintiff alleges the death of Herdman in the city of New Orleans on December 9, 1916, the probating of his last will and testament, the appointment and qualification of an executor on December 11, 1916, the appointment of an attorney for absent heirs, the appearance of the attorney for the legatees on October 24, 1917, and the taking of inventories on December 11, 1916, and December 23, 1916, showing that the assets of the succession of Herdman totalled $456,792.88.

Plaintiff alleges, in paragraph 4 of its petition:

"That under said testament, deceased willed his property to his wife and children named therein, and whose residence was given at a certain town in the empire of Russia, to wit, Odessa. Deceased declared, however, that he left his wife and three children at Odessa, Russia, thirty-five years before the date of his will. That in said will, deceased declared that he left his property to his wife and the three children born of his marriage, and, in the event of the death of his wife and children, then that his estate should go to his grandchildren or other descendants, and, if there were neither of the foregoing named, then his estate should be distributed between his legal heirs."

In paragraph 5 of its petition, plaintiff represents:

"That there does not exist between Russia and the United States of America any treaty that would entitle citizens or residents of Russia to inherit in successions opened in the state of Louisiana, and that the former treaty existing between the United States of America and Russia was abrogated by the United States in the year 1911; that, under the conditions existing since 1911, citizens and residents of Russia are not entitled to and cannot inherit from residents of the United States or in successions opened in the state of Louisiana."

The attorney for the legatees filed an exception of no right or cause of action. The executor and attorney for absent heirs filed similar exceptions, and also exceptions that the Attorney General is without right or capacity to bring such action.

These exceptions were sustained by the trial judge, and the state has appealed.

The state does not allege, as a substantive fact, that Herdman died without heirs.

On the contrary, the allegation in the state's petition is that he died, leaving a last will and testament, in which he instituted his wife and daughters as his legatees, and that the attorney for these legatees has appeared in their behalf.

In avoidance of this allegation, the state alleges that 35 years had elapsed since Herdman left his wife and children in Odessa, Russia; and from this allegation the state deduces, as a presumption, that the heirs of Herdman had died during this period, and, therefore, that he left no heirs, forced or legal, at the time of his death.

In avoidance of this allegation, the state alleges also that Herdman left no heirs, forced or legal, because there is no treaty between the United States and Russia, allowing the citizens or residents of the latter country to claim successions falling to them under the laws of the state of Louisiana. The state has not alleged, as a direct positive fact, that Herdman had no wife or children at any time, or that he was without heirs at the date of his death.

[1] The presumption of the death of Herdman's wife and daughters, after a lapse of 35 years, is not justified by any law of this state, based, as this presumption is in this case, solely upon the lapse of time. Unless a century has passed since a party's birth, his death will not be presumed, but must be proved. R. C. C. art. 70; Martinez v. Succession of Vives, 32 La. Ann. 305; Willett v. Andrews, 51 La. Ann. 493, 25 South. 391.

The presumption, therefore, remains that Herdman's wife and daughters were alive at the date of his death, December 9, 1916.

[2] The allegation that Herdman's wife and daughters, being Russian aliens, were debarred from institution as legatees under his will, in the absence of treaty between the United States and Russia, is not an allegation of well-pleaded fact, but an erroneous conclusion of law.

[3] It is the settled jurisprudence of this court that there is nothing in the laws of the state of Louisiana that excludes aliens from the inheritance of any kind of property, personal or real. Phillips v. Rogers, 5 Mart. (O. S.) 700; Duke of Richmond v. Milne's Executors, 17 La. 312, 36 Am. Dec. 613; Succession of De Roffignac, 21 La. Ann. 364; Lykiardopoulo v. Railway Co., 127 La. 318, 53 South. 578; R. C. C. art. 902.

[4] Article 1490 of the Civil Code, providing that "donations inter vivos and mortis causa may be made in favor of a stranger when the laws of his country do not prohibit similar dispositions from being made in favor of citizens of this state," has no application to forced heirs, or legal heirs, as such heirs cannot be considered as "strangers," either in law or in fact, as far as the donor or testator is concerned. Succession of Baker, 129 La. 74, 55 South. 714, Ann. Cas. 1912D, 1181.

[5] It is well settled that, in the absence of a treaty, a state may permit an alien to inherit.

In the case of United States v. Fox, 94 U. S. 315, 24 L. Ed. 192, it is said:

"The power of the state to regulate the tenure of real property within her limits, and the modes of its acquisition and transfer, and the rules of its descent, and the extent to which a testamentary disposition of it may be exercised by its owners, is undoubted. It is an established rule of law, everywhere recognized, arising from the necessity of the case, that the disposition of immovable property, whether by deed, descent, or any other mode, is exclusively subject to the government within whose jurisdiction the property is situated."

As there is no treaty on the subject between the United States and Russia, the succession laws of the state of Louisiana, permitting aliens to inherit, are not in violation of the provisions of any treaty, and must be upheld.

In the case of Blythe v. Hinckley, 180 U. S. 333, 21 Sup. Ct. 390, 45 L. Ed. 557, it is said:

"This court has held from earliest times in cases where there was no treaty that the laws of the state where the real property was situated governed the title and were conclusive in regard thereto."

[6] The articles of the Civil Code governing the right of the state to sue in the present case are articles 485 and 929.

Article 485 declares:

"Vacant successions go to state. The succession of persons *who die without heirs*, or which are not claimed by those having a right to them, belong to the state." (Italics ours.)

And article 929 provides:

"In default of lawful relations, or of a surviving husband *or wife*, or acknowledged natural children, the succession belongs to the state." (Italics ours.)

The failure of the state's petition to allege that Herdman died "without heirs" is fatal to the right or cause of action of the state, and the exceptions of no right or cause of action tendered herein were properly sustained by the trial judge.

[7] As the petition of the state fails to disclose a right or cause of action, the state's main demand to be decreed owner of the estate of Ike Herdman and entitled to be placed in possession of same, as well as its alternative demand that the executor be ordered to deposit with the State Treasurer, or in the state treasury, the assets of the succession of Ike Herdman, are necessarily without foundation upon which to rest. However, it may be said in this connection that the state has the right to claim the proceeds, and not the ownership of the property of vacant successions. Puyoulet v. Gehrke, 143 La. 315, 78 South. 571; article 254, Const. 1898 and 1913, R. C. C. arts. 1196, 1204.

[8] As this court has no original jurisdiction to entertain the consideration of an intervention filed here in the first instance, it declines to consider the petition of the public administrator for the parish of Orleans, filed in this court December 6, 1922, praying for judgment in favor of the state, and, in the alternative, that the cause be remanded, and that the public administrator be appointed dative testamentary executor of the estate of Ike Herdman, for the purpose of reducing it to cash, and, after payment of debts, to deposit the balance in the state treasury for the benefit of the public school fund.

It may be that future contingencies may arise in this case, under which it may become necessary for the state to take action to protect its interest. We think it proper, therefore, to reserve to the state the right, should such interest arise, to institute new proceedings.

It is therefore ordered, adjudged, and decreed that the intervention filed in this court by the public administrator of the city of New Orleans be dismissed, and that the judgment appealed from, sustaining the exceptions of no cause of action, be affirmed, with the above reservation in favor of the state.

O'NIELL, C. J., sees no necessity for amending the decree, but otherwise concurs.