156 So. 290

## BENNETT v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.

### No. 32824.

### July 2, 1934.

Dart & Dart, Robert Ewing, Jr., and Leo L. Dubourg, all of New Orleans, for appellant.

Rosen, Kammer, Wolff & Farrar, of New Orleans, for appellee.

LAND, Justice.

Plaintiff, as beneficiary, sues to recover $3,941.16 on a life insurance policy for $5,-

000, issued by defendant on the life of Jack H. Bennett, plaintiff's husband, who disappeared from his home in the city of New Orleans in March, 1924.

The suit was filed September 24, 1931.

The only issue involved is whether or not plaintiff's husband has been proved to be dead and plaintiff is therefore entitled to recover under the policy.

The facts alleged in the petition to support the presumption of death are substantially as follows:

That Jack H. Bennett left his home in the city of New Orleans on or about March 27, 1924, and has never been heard from since that time.

That he was 47 years of age when he left.

That he had been suffering from pulmonary tuberculosis, and had been under the treatment of a physician therefor from January, 1923, to December, 1923, but that, instead of improving, his condition steadily grew worse.

That the knowledge that he was afflicted with that disease and that his condition showed no improvement under treatment made him melancholy and despondent, which was his condition at the time he left March 27, 1924, and during the time just preceding his departure.

That the condition of his health from the ravages of the disease was such that it would have been impossible for him to have survived as long as a period of seven years.

That at the time he left and prior thereto he was on good terms with plaintiff, his wife. That he had always been kind, thoughtful, and affectionate towards her, and that his failure to have communicated with her since March, 1924, is irreconcilable with his previous conduct towards her.

That shortly before he left he had suffered a serious hemorrhage of the lungs, and his health was steadily growing worse. That the failure of plaintiff to receive any word from him during the period of more than seven years since he left home, in contrast with his previous thoughtful and affectionate disposition towards plaintiff, can be reasonably explained under no other hypothesis than that he is dead.

An exception of no cause of action was filed by the defendant, and, after argument, was overruled.

After trial on the merits, the court below dismissed plaintiff's suit, and from this judgment plaintiff has appealed.

Dr. George S. Bel, of New Orleans, the principal witness for plaintiff, testified that he treated Bennett from January 12, 1923, until December 18, 1923, and that Bennett was suffering from pulmonary tuberculosis. He further testified that Bennett was not in the last stages of consumption, and that he never treated him at home, but that the patient came to his office for all treatments.

The doctor testified:

"Q. Was his condition such that it would have been reasonably possible for it to have brought on his death within a period, say, of seven years after you saw him?

"A. Why, sure, possibly it could have brought on his death.

"Q. Well, would you have considered it very unusual or extraordinary if it brought on his death within that period?

"A. The death of an individual of this type, the way we draw our conclusions, would be if he followed out the proper directions and took a first class rest and all such things like that, it is possible he would not have died.

"Q. The question is whether it is possible he would have died?

"A. Yes, sir, it was possible.

"The Court: Q. What are the probabilities, Doctor?

"A. It is just probable. I could not say whether the man is dead or alive or not." Tr. p. 19.

In Hayes v. Berwick, 2 Mart. (O. S.) 138, 5 Am. Dec. 727, the court said: "By a maxim, consecrated by the best authorities, every absentee, whose death is not clearly and precisely established, is presumed to live until the age of one hundred years; that is to say the most remote period of the ordinary life of man. 1 Denisart, 13, Verbo Absens.

"An absentee is presumed to live until the contrary is proved: otherwise the absence must be such, that the life of a man, who may live one hundred years, should be presumed to have ended. 1 Ferriere, 13, Verbo Absens.

"Death is never presumed from absence, therefore he who claims an estate, on account of a man's death, is always held to prove it. An absentee is always reputed living, until his death be proved—or until one hundred years have elapsed since his birth. 2 Ferriere, 226, Verbo Mort.

"Although a man be absent, and there be no account of him, his death is not to be presumed: they do not proceed to the division of his estate, for he is presumed to live one hundred years. 2 Pigeau, 2."

See, also, Succession of Herdman, 154 La. 477, 97 So. 664; Quaker Realty Co. v. Starkey, 136 La. 28, 66 So. 386, L. R. A. 1915D, 176.

In Iberia Cypress Co. v. Thorgeson, 116 La. 218, at page 222, 40 So. 682, 683, the court said: "The death of an absentee less than 100 years old is never presumed. Civ. Code, art. 70; Babin v. Phillipon's Ex'rs, 3 La. 376; Martinez v. Succession of Vives, 32 La. Ann. 305; Rachel v. Jones, 34 La. Ann. 110. Hence the absence of J. H. Bergess from his usual place of residence during 7 years creates no presumption of his death."

In Martinez v. Succession of Vives, 32 La. Ann. 305, it is said at page 307: "There are occurrences—as a wreck, a battle, or the like—which would authorize a court in presuming the death of one, known to have been exposed to the perils of either; but such a presumption 'must be weighty, precise and consistent.' The ascertained facts on which it is rested, must draw with them, as a necessary consequence, the unascertained facts sought to be established, 'and exclude every other rational conclusion.' "

So, where the absentee had not been heard from for more than twenty years, and was last heard from about a year before the great earthquake and fire at San Francisco in the year 1906, and the house in which he was then living had been destroyed in the earthquake and fire, and some 1,200 corpses could not be identified, it was held that the reasonable conclusion was that the absentee was

dead. Marrero v. Nelson, 166 La. 122, 116 So. 722.

Where the absentee lived in the city of New Orleans and was shown to have left home on shipboard for a nearby port, where yellow fever was raging, and the boat was shown to have left there for some other distant port, and neither the boat nor the absentee ever returned or was heard of again, the lapse of thirty-five years and absence under such circumstances were held to be sufficient to justify the conclusion that the absentee was dead. Sterrett v. Samuel, 108 La. 346, 32 So. 428.

In Boyd v. New England Mutual Life Insurance Co., 34 La. Ann. 848, the absentee disappeared from a ship at sea. Nearly seven years elapsed since the date of his disappearance without any tidings from him. His absence under such circumstances was held to support the conclusion that he was dead.

But, in the case at bar, the absentee's own physician testifies that "it is just probable" that Bennett is dead, and would not state that it was his opinion that he was dead.

There is no evidence in the record to show that the absentee has been exposed to any peril of life during his absence.

The letter written by the absentee to his wife on the morning he disappeared does not suggest any suicidal intent or purpose. It reads as follows:

"Honey:

"Do not worry when you get this as I am doing what I think best for all of us.

"I met an old time friend Tuesday and he offered me a job as a pipe fitter for a big oil company in Oklahoma and has waited since then to take me with him in his car. I will make from ten to fifteen dollars per day.

"I hate to do this but will make up to you and Chester many times when I get to making real money. Will enclose ten dollars for your immediate needs and send more as soon as I reach Vanita.

"Tell Chester that I love him and not to feel too hard against me for my duplicity.

"We leave at 1 P. M. today.

"Over.

"Don't forget dearest it is for your sake that I want to make more money.

"Love to all.                    Jack."

Chester Canfield Phillips, one of the witnesses in the case, was asked the question: "What did Mr. Bennett mean when he said: 'Tell Chester I love him and not to feel too hard against me for my duplicity?'"

The witness answered: "On the morning of his disappearance his premium was due, and I got the amount of his premium and met him around 10:30 or 11 o'clock, and I gave him the money to go up and pay his premium. Well, I found out later in the day he had gone with all the money and I had to make arrangements to get more money to protect the premium. It was the last day of grace. And I think that was what he meant."

In this letter Bennett makes no statement that he thought death impended or that he was not going to get well. On the contrary, he indicated that his purpose in leaving was to work and earn more money.

Bennett, suffering from tuberculosis, an ill man, but not in the last stages of consump-

tion, leaves home with $217.60 with which he was to pay a life insurance premium, and which had been contributed to him by his stepson, and left a letter in which he declares it is his intention to go to Oklahoma in order to increase his earning power.

In spite of the efforts to determine his whereabouts by his family, he is never found, and the question as to whether his death is to be presumed depends upon these facts.

The trial judge, who saw and heard the witnesses testify, decided that no such presumption had been established by the facts developed and dismissed plaintiff's suit.

We find no error in his conclusion.

Judgment affirmed.