This is a concursus proceeding to determine who, of the parties cited, J.E. Perkins as one claimant, and the State of Louisiana, through the Director and Board of Minerals and the Register of Land Office for said state, as the other claimant, all of the Parish of East Baton Rouge, is entitled to $225.43 deposited by the Standard Oil Company of New Jersey in the Registry of the District Court for the Parish of East Baton Rouge. The said sum of $225.43 arises out of oil purchased by the Standard Oil Company of Louisiana and its successor, the Standard Oil Company of New Jersey, between May 5, 1940, and November 30, 1945, inclusive, from a unit in the Eola Oil Field in Avoyelles Parish, wherein a lot was allocated an interest of .016129 of the said oil, or .00217 interest in the total production amounting to the sum supra.
The State of Louisiana appeared and in its answer admits that J.E. Perkins is claiming the proceeds of the said oil, but denies the validity of his pretended claim and avers that the funds belong and should be paid to it, for the reason that the said Lot D of Tract 1, to which the oil had been allocated, belonged to the State, having been escheated by the death of Ella M. Prescott, its former owner, the said Ella M. Prescott having died without any heirs with the right of inheritance.
The defendant Perkins interposed exceptions of no right and no cause of action against the plaintiff, which exceptions were referred to the merits. He then answered, admitting that he was a claimant of the money deposited. He averred that he was the owner in fee simple of the lot to which the proceeds of the oil had been allocated; that he, or his predecessors in title had leased the said property for oil development and that plaintiff stood as his lessee and therefore could not dispute his *Page 504 
title. He further set out that his vendors had been recognized as the natural heirs of Ella M. Prescott, and as such, sent into possession of the said property by judgment of court for the Parish of Avoyelles, and which proceedings were a collateral attack on the said judgment. He therefore included in his answer a plea of estoppel, res adjudicata, and plea to the jurisdiction of the District Court for the Parish of East Baton Rouge as to the plaintiff. As to the defendant State of Louisiana, he averred that it was a mere trespasser, not having taken any proceedings to escheat the property.
On these issues, the case was tried, resulting in a judgment overruling all exceptions and recognizing J.E. Perkins as owner of the funds, less the costs of court, and discharging the plaintiff from further liability. The State of Louisiana has appealed. Defendant Perkins has answered the appeal in his brief, a novel procedure indeed.
The case was submitted on the following stipulation of facts: The Standard Oil Company of Louisiana, a Louisiana corporation, on or about May 3, 1940, started purchasing oil produced from a well located on a drilling unit of approximately 22.32 acres lying in the Eola (Freetown), Louisiana, townsite in the Parish of Avoyelles, known as Tract No. 1, in which was located Lot D, consisting of .36 acres. The said Standard Oil Company of Louisiana, and its successor, the Standard Oil Company of New Jersey, the plaintiff herein, continued to purchase the said oil from the well on said unit until the filing of the suit. The part of the purchase price of the oil produced during the period from May 5, 1940, to November 30, 1945, inclusive, allocated to Lot D of the said unit or tract 1, amounted to $1,802.34 in value, 1/8 of which as royalty is the sum of $225.43, the amount deposited in court.
"That the property from which the production was realized in this case was acquired by Ella M. Prescott, she being unmarried at the time and having no legitimate relatives, that she was born out of wedlock and that her mother, then single and unmarried, was Winnie Wade; that subsequent to the birth of Ella M. Prescott, Winnie Wade married Clarfore Gremillion, and that Walter Gremillion and Chester Gremillion are the only issue of said marriage; that Ella M. Prescott was not legitimated or acknowledged, according to the provisions of Article 203 of the Revised Civil Code, but she was raised in the home of Winnie Wade and by the latter treated the same as if she had been born of a lawful marriage and that all persons adquainted with the family accepted and treated her in the same manner; that both the mother and father of Ella M. Prescott died before Ella M. Prescott, and that the said Ella M. Prescott died intestate without having married, and without leaving any ascendants, descendents, adopted children or any other legitimate relatives whatsoever.
"That, by ex parte judgment of the Honorable Twelfth Judicial District Court in and for Avoyelles Parish, Louisiana, rendered in August, 1945, in the matter of the Succession of Ella M. Prescott, deceased, bearing No. 1340 on the Probate Docket of said court, Walter Gremillion and Chester Gremillion were recognized as the natural brothers and sole heirs of the said Ella M. Prescott and sent into possession of all the property left by Ella M. Prescott at her death, which included the property described in these pleadings and from which production was realized in this case.
"That following the date of succession judgment aforesaid, Walter Gremillion and Chester Gremillion executed a deed to J.E. Perkins which conveyed to said Perkins the lands described in the succession judgment (which included the property upon which production was realized in this case) and all of the interests of Walter Gremillion and Chester Gremillion in the lease covering the said lands, and that the said deed has been placed of record and no rights acquired by J.E. Perkins therein have been sold, transferred, or assigned.
"That there are two basic issues involved, viz., (1) can the judgment in the succession proceedings of Ella M. Prescott in which Walter Gremillion and Chester Gremillion were recognized as the sole heirs. of the said Ella M. Prescott be attacked *Page 505 
in this suit and (2) if the judgment can be so attacked will Walter Gremillion and Chester Gremillion under the provisions of Article 923 of the Revised Civil Code legally inherit from her to the exclusion of the State of Louisiana."
[1-3] Although defendant Perkins styles his brief as an answer to the appeal, we fail to construe it as such. It is but a brief on his exceptions and on the merits. Even admitting it to be an answer to the appeal, we do not see wherein it can serve him for any purpose in so far as plaintiff, Standard Oil Company of New Jersey, is concerned. The only appellant before us is the State of Louisiana. Perkins and the plaintiff are the appellees and it is now too well settled that a judgment cannot be amended or reversed in any manner between coappellees. All exceptions of defendant Perkins were filed against plaintiff's petition and not as against the State of Louisiana. The prayer of his answer is that the exceptions be maintained and plaintiff's suit be dismissed at his costs. The only question before us is the correctness of the judgment awarding the sum on deposit in the registry of the lower court to defendant Perkins.
[4] Civil Code Article 212 states: "Illegitimate children of every description may make proof of their material descent, provided the mother be not a married woman. But the child who will make such proof shall be bound to show that he is identically the same person as the child whom the mother brought forth." The jurisprudence under that article is now well settled that where an illegitimate child seeks to inherit from its parents, such child may prove its acknowledgment by the parent by any legal evidence. See Jobert v. Pitot, 4 La. Ann. 305; Succession of Lacosst, 142 La. 673, 77 So. 497.
It is shown by the evidence that Ella M. Prescott was the child of Winnie Wade and William Prescott, neither of whom were married. After the birth of Ella M. Prescott, Winnie Wade was legally married to Clarfore Gremillion, by whom she had two children, namely, Walter and Chester Gremillion. Ella M. Prescott was reared in the same home as were the Gremillion children, and Winnie Wade Gremillion, before and after her marriage, publicly confessed and acknowledged Ella M. Prescott as her child.
[5] Under these facts, Ella M. Prescott was the natural child of Winnie Wade.
Article 923 of the Civil Code provides: "If the father and mother of the natural children died before him, the estate of such natural child shall pass to his natural brothers and sisters, or their descendants."
In the present case the evidence shows that the father and mother of Ella M. Prescott died before she did.
We had somewhat a similar case in the Succession of Falls, 4 La. App. 10, save that in that case the mother was one of the claimants, and other claimants were the legitimate children of the mother born of her marriage to Robert Bingham subsequent to the birth of decedent Falls. In that case we held: "The children of Mary Bingham, issue of her marriage with Robert Bingham, are the natural brothers and sisters of Simonette Reason Falls, and could inherit from her only to the exclusion of the State".
Following that decision, which we deem to be correct withoutfurther discussion, we are of the opinion that the judgment rendered holding the Gremillions to be the natural brothers of the deceased, Ella M. Prescott, to be correct.
However, considering Perkins' answer to the claim of the State in the nature of an exception of no right or cause of action, we find a very interesting opinion rendered by a former member of our court while serving on the Supreme Court, Judge Leche. It is the case of Puyoulet v. Gehrke, 143 La. 315, 78 So. 571, 572. We quote from the decision extensively:
"The law provides in C. C. art. 485, that the successions of persons who die without heirs, or which are not claimed by those having a right to them, belong to the state. Article 929 is to the same effect. Strictly speaking, the state acquires, not as heir, but in default of lawful relations, or of a surviving husband or wife, or acknowledge natural children. But even if the state be considered an heir, that heirship, like that of the surviving husband or wife, *Page 506 
or his or her natural children, is, according to articles 878 and 917, irregular. The doctrine of 'Le mort saisit le vif' does not apply to irregular heirs. Succession of Allen, 44 La. Ann. 801, 11 So. 42; Succession of Barber, 52 La. Ann. [960,] 963, 27 So. 363. The only persons' who succeed eo instanti to the deceased are, under the terms of article 940, his legal or testamentary heirs and universal legatees.
"From these provisions of our law it is apparent that the seisin which is effected by the operation of law in favor of the legal or testamentary heir or the universal legatee does not attach in favor of the state. In other words, the state is not considered as succeeding to the deceased from the instant of his death. Other provisions of the Code direct the manner in which irregular heirs, who are not invested with the scisin, must demand the possession of the property of the succession before they can obtain the same. But these provisions make no mention of the state. The articles of our Code (925 and 930) provide for the manner in which natural children and the surviving husband or wife shall be put in possession of the effects of successions falling to them, but there is no similar provision in the Code in favor of the state. The corresponding article (724) of the Code Napoléon, on the other hand, recognizes the right of the state to be placed in possession of the effects of a succession which devolves upon it. Considering that the framers of our Code were guided in their labors by the provisions of the Code Napoléon, it must then be inferred that they purposely refrained from giving such right of action to the state. The question that next arises is, how then is the state to get possession of succession property which, under the terms of articles 485 and 929 of the Louisiana Code, devolves upon it in default of legal heirs? The answer is to be found in the articles 1169, 1196, and 1197, which say that after the expiration of one year from the appointment of the curator of the vacant succession the property should be sold at public auction and the proceeds paid into the hands of the treasurer of the state.
(2) "It is evident that the legislative authority never contemplated that succession property which might devolve upon the state in default of legal heirs should be owned and possessed in kind by the state. On the contrary, it is manifest that it is only after such property has been converted into money that the state can obtain full control over it and exercise the right of ownership. It is against the policy of our law to permit the state to own in kind property which may only be adapted to private purposes, or to permit it to compete with its citizens in the acquisition of property which by its nature cannot be devoted to public use. That the state acquires the proceeds and not the property of vacant successions is fully attested by the articles of all our Constitutions on this particular subject. Whilst the Constitution of 1812 makes no mention of successions devolving upon the state in default of legal heirs, the Constitution of 1845 (article 135), that of 1852 (article 137), that of 1864 (article 144), that of 1868 (article 139), that of 1879 (article 229), and those of 1898 and 1913 (article 254), [Article 12, Sec. 14, Constitution 1921], in creating a free public school fund, uniformly recognized as accruing to the state, not the property, but the proceeds of vacant estates falling under the law to the State of Louisiana. In the Succession of Kate Townsend, 40 La. Ann. 66, 3 So. 488, although the precise issue discussed here was not presented to the court, the final clause of the decree orders that: 'The residue of the property of said succession be turned over and paid into the treasury of the state of Louisiana to be therein deposited and further dealt with according to law.'
"The court clearly uses the word 'property' in the sense of proceeds of the property, as the property itself, whether it was movable or immovable, was not subject to deposit in the vaults of the state treasury.
[6] "Our conclusions are that under articles 485 and 929 of the Civil Code, construed in connection with articles 878, 917, and 940, the state does not succeed to the deceased in vacant successions, and therefore does not co instanti become vested with the ownership of property depending upon such successions; that by article 1196 the state may only acquire the custody and *Page 507 
control of the funds arising from the sale of the property of vacant successions; and that by article 1204 'these funds may be made use of' for the purposes mentioned in article 254 of the Constitution, (Art. 12, Sec. 14, Constitution 1921) 'but their reimbursement is provided for and guaranteed on the faith of the state, so that the heirs who present themselves meet no delay in receiving them.' "
[7] In our case, it would be necessary for us to hold that the title or ownership of the property from which the oil was produced was in the state, a conclusion which neither the law nor the facts justify. The state has not followed the procedure as outlined by this decision. In fact, the record does not show that it took any steps whatsoever to annul the judgment sending the Gremillions in possession of the property from which the oil was produced or allocated, and having itself recognized as the owner of the property. Under this opinion it could not be recognized as the owner, but only had one alternative and that was to have the property adjudicated as a vacant succession and as such, sold, and the proceeds thereof deposited in the state treasury.
Under this decision, the state has not shown a right of action.
For these reasons assigned, the judgment is affirmed.