465 So.2d 98 (1985)
Richard Earl LEDET
v.
STATE of Louisiana, DEPARTMENT OF HEALTH AND HUMAN RESOURCES.
No. CA 2298.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1985.
Rehearing Denied March 27, 1985.
Writ Denied May 24, 1985.
Robert L. Hackett, Oestreicher, Whalen & Hackett, New Orleans, for plaintiff.
Patrick F. Lee, Joseph R. Ward, Jr., Ward & Clesi, New Orleans, for defendants.
Before REDMANN, C.J., and BARRY and KLEES, JJ.
REDMANN, Chief Judge.
Can a plaintiff in a wrongful death action whose own right of action depends upon the decedent's having "left no ... parent surviving," La.C.C. 2315, prove a parent's death by C.C. 70's presumption of death from an absence without news that has lasted ten years? Is a half brother a "brother" within C.C. 2315?
This appeal, from the dismissal of plaintiff's wrongful death action on exception of no right of action, raises those questions. We answer each affirmatively and therefore reverse.

*99 I
Plaintiff's petition alleges that he is the half brother of a person whose death by asphyxiation was caused by the negligence of defendants. Louisiana law causes to survive, in favor of "the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving," C.C. 2315(3), a decedent's right to recover personal injury damages. If the decedent died from the personal injury, that law also gives those survivors the right to recover their own damages resulting from the wrongful death.
Plaintiff alleges that decedent had no children, that decedent's father predeceased him, and that decedent's mother "abandoned the family over 25 years ago and has not been heard from since. The plaintiff has attempted to locate the mother and has only discovered that she lived somewhere in Virginia 20 years ago." (An affidavit by plaintiff, apparently stipulated as evidence, adds only that it was 29 years before decedent's death, when decedent was one year old, that the mother left the family.) Plaintiff does not contend that, without the benefit of the presumption he claims, the meager evidence he has (presumably including knowledge from his deceased half brother) proves, as more probable than not, that decedent's mother is dead. On the other hand, defendants do not contend that plaintiff's evidence is insufficient to prove that the mother has been absent and unheard of for over ten years.
We first observe that the mother is an absentee within the meaning of that term as used in the Louisiana Civil Code. C.C. 3556(3) defines absentee:
"An absentee is a person who has resided in the State, and has departed without leaving any one to represent him.
"It means also the person, who never was domiciliated in the State and resides abroad.
"In matters of succession the heir whose residence is not known is deemed an absentee."
Art. 70, upon which appellant relies, is found in Title III, "Of Absentees," in the Civil Code's Book I, "Of Persons." We first note other provisions in that Title that authorize others to act as if an absentee had died after extended absence without news.
Title III's Chapter 1, "Of the Curatorship of Absentees," authorizes the administration of the property of absentees by a curator. Art. 53 provides that on the curator's showing "that the absentee has not been heard from for the space of ten years, and that he has no heirs known to him residing in the State ...," the absentee's property is to be ordered sold and its proceeds paid to the state "as in case of vacant successions."
Chapter 4, "Of the Effects of Absence Respecting Marriage," formerly provided, in art. 80, "Ten years of absence, without any news of the absentee, is a sufficient cause for the husband or wife of such absentee to contract another marriage...." (Chapter 4 was repealed by Acts 1938 No. 357, on the theory that it had become unnecessary after Acts 1916 No. 269 authorized divorce after spouses live separately for seven years (now one year, R.S. 9:301).)
Art. 70 is found in Chapter 2, "Of the Putting into Provisional Possession the Heirs of an Absentee." In that chapter, art. 57 first provides: "When a person shall not have appeared at the place of his domicile or habitual residence, and when such person shall not have been heard of, for five years ...," his heirs may be put into provisional possession of "the estate which belonged to the absentee...." From the first words of that article, one may infer that it governs persons who had been domiciled in Louisiana (as opposed to persons who never lived here; see Succession of Herdman, 154 La. 477, 97 So. 664 (1923)). But one may not infer that art. 57 requires additional circumstances suggestive of death. The latter is an improper inference, as a comparison of art. 57 with art. 60 shows. Art. 60 authorizes provisional possession before five years' absence *100 "when it shall be shown that there are strong presumptions that the person absent has perished." Thus if additional circumstances exist, the case would be governed by art. 60 rather than by art. 57.
Absolute, as opposed to provisional, possession is provided by art. 70the article that appellant relies upon. Until its amendment by Acts 1948 No. 343, art. 70 provided (as did its earlier versions in the Code of 1825 and the Digest of 1808, and as did Code Napoleon art. 129) for absolute possession in the heirs, "[i]f the absence has lasted thirty years since the provisional possession, or ... if one hundred years have elapsed since the birth of the absentee...." (That 100-year provision was compared by Hayes v. Berwick, 2 Mart. 138 (La.1812), with an ancient presumption that an absentee lives to the age of 100 yearsa presumption repeated in several other cases prior to the 1948 amendment of art. 70.)
The 1948 amendment to art. 70 changed the time requirements for absolute possession (while making express the heirs' power to "deal with such property as the absolute and unconditional owners"). Instead of requiring either 30 years from provisional possession or 100 years from the absentee's birth, the 1948 version declared simply that "[i]f the absence has lasted thirty years a presumption of death shall follow...," and the heirs could obtain absolute possession. Acts 1978 No. 457 reduced that new 30-year period to ten years, and the 1978 Act's title specified its purpose (in part) as "to provide that presumption of death shall follow an absence of ten years...."
Thus art. 70 now reads, "If the absence has lasted ten years a presumption of death shall follow and the known heirs of the absentee" may be put into absolute possession of the absentee's estate.
One may therefore summarize the Code's original scheme as follows: absence for ten years without being heard of enables the absentee's spouse to remarry and the proceeds of his or her property, in default of heirs, to be given to the state; absence for 30 years after provisional possession or until age 100 entitles the absentee's heirs to the absolute possession of the absentee's property. In each case the Code recognizes the possibility of reappearance of the absentee, but it allows others to act meanwhile as if the absentee had died. Later legislation eliminated the remarriage rule as unnecessary, and granted the heirs absolute possession after only ten years' absence. Art. 70, since its 1948 amendment, contains the only express declaration of a presumption of death, but some presumption of death from ten years' absence without communication is the implicit foundation of the remarriage and escheat provisions. (Any argument that the proper theory is merely authorization to act as if death had occurred, rather than presumption of death, seems word-play rather than substance.) The presumption of death from extended absence without news has thus not been an isolated, one-situation provision to place heirs in possession but a more general principle in the Code, also expressly allowing remarriage and escheat.
Our question then becomes whether that general principle of presumption of death is applicable to a parent unheard of for over ten years, so as to enable a sibling to recover damages under C.C. 2315 for wrongful injury and death of a decedent who "left no ... parent surviving."
We answer that the general principle of applicability by analogy, inherent in C.C. 17's pari materia construction rule, makes the presumption of death applicable here. Life must go on not just in some but in all respects, notwithstanding the conceivable continuance in existence of a long unheardfrom absentee. Our answer is reinforced by the public policy embodied in C.C. 2315's survivorship and wrongful death provisions, a public policy that overcomes the cynicism, arising from the transplanted common-law theory that death abates a personal injury action, that it is cheaper to kill than to maim.
We distinguish Collins v. Becnel, 297 So.2d 506 (La.App. 4 Cir.1974), cited by defendants for its refusal to apply in a wrongful death case C.C. 939's presumption *101 of survivorship among persons dying in the same event. In Collins, the deaths of mother and daughter in the same automobile accident were stipulated to have been "instantaneous." We distinguish Collins on its facts, for it says it "hold[s] that the law of torts makes plaintiffs the wrongful death action beneficiaries in this case, where in ... fact the victim `left no spouse, child, or parent surviving.'" It thus refused (by a divided court, rightly or wrongly) to apply a presumption where sufficient facts had been stipulated to make a presumption unnecessary for purposes of C.C. 2315. In our case there is no such stipulation and the evidence is so limited that a presumption is necessary. We further observe of Collins that its result is consistent with ours in respect to the fundamental public policy of C.C. 2315consistent with the policy that it should not be cheaper to kill than to maim. Collins allowed, rather than denied, recovery to the survivors of a wrongfully killed person.[1] We do the same, by holding that known survivors among art. 2315's beneficiaries have the right to recover the tort victim's damages (and their own), rather than that the negligent killer owes no damages because an unknown possible survivor, absent and unheard of for over ten years, alone had the right to recover.
We need not address the possibility that C.C. 2315's public policy and analogy from C.C. 76 should give the tortfeasor the burden of proving that the absentee was alive at the time of the wrongful death. (C.C. 76 rules that one claiming a right accruing to an absentee must prove the absentee's existence at the time the right accrued. Defendant claims that the survivorship and wrongful death rights accrued to the absentee mother here.)
We hold that C.C. 70's presumption of death following ten years' absence is applicable in deciding whether a decedent has "left no ... parent surviving" for purposes of C.C. 2315.

II
Defendants also argue that plaintiff, a half brother of decedent, is not a "brother" of decedent within C.C. 2315. That article gives to "the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving," art. 2315(3), the right to recover the decedent's personal injury damages as well as the survivors' own damages from the injured person's wrongful death. Defendants assert, reciting its oft-told history, that art. 2315's survivorship and wrongful death actions "may be extended only to the beneficiaries named in the statute and that the classes of beneficiaries must be strictly construed," citing Roche v. Big Moose O.F. Trk. Svc., 381 So.2d 396, 399 (La.1980). Defendants theorize that a "brother," strictly construed, is a brother of the full blood, and therefore that a brother of the half blood is not a brother. We reject this argument because it violates both the statutory construction rule of C.C. 14 and the public policy of C.C. 2315.
Art. 14 provides, "The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words."
The ordinary meaning of brother includes half brother. Webster's New International Dictionary (2d ed.) gives as its first definition of brother:
"A male person, or, by extension, a male animal, considered in his relation to another person, or animal, having the same parents (whole brother), or one parent only in common (half brother)." *102 Black's Law Dictionary (rev. 4th ed.) defines brother thus:
"One person is a brother `of the whole blood' to another, the former being a male, when both are born from the same father and mother. He is a brother `of the half blood' to that other (or half-brother) when the two are born to the same father by different mothers or by the same mother to different fathers."
C.C. 14 therefore obliges us to interpret the word brother to include a half brother, because its usual meaning includes a half brother.
A contrary conclusion would defeat rather than serve the public policy of C.C. 2315 to prevent a tortfeasor's being rewarded by having killed rather than merely injured the victim: to prevent such a tortfeasor from escaping, through the difficult doctrine of abatement, the general legal obligation to repair the damage one causes. The policy of art. 2315 can only be effectuated, in the case of a victim who leaves only half brothers, by recognizing them as brothers, as indeed they are in the ordinary sense of the word.
Reversed; exception overruled at defendants' cost.
NOTES
[1] Collins does not explain why it was necessary for the mother's siblings to recover (in their own right) their own damages from the mother's death, rather than (as heirs of the right of the daughter, their niece) the daughter's damages from the mother's death. It is not clear that the daughter's damages were zero despite her contemporaneous death (can the tortfeasor benefit by killing two persons rather than one?): perhaps the court would ignore the daughter's death in quantifying her damages, just as it ignores a surviving spouse's remarriage. The case might more squarely have presented its question had it been a dispute between the mother's siblings and the father's siblings, over who should recover whose damages resulting from whose death.