STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


17-812


SUCCESSION OF RICHARD STEWART, JR., ET AL.

VERSUS

MARK ISAIAH GORDON, ET AL.


**********


ON APPLICATION FOR SUPERVISORY WRITS FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 49,686 C/W 49,751 C/W 49,832
HONORABLE JOHN C. REEVES, DISTRICT JUDGE


**********


SHANNON J. GREMILLION
JUDGE


**********


Court composed of Sylvia R. Cooks, Billy H. Ezell, Shannon J. Gremillion, Phyllis M. Keaty, John E. Conery, D. Kent Savoie, and Van H. Kyzar, Judges.

Cooks, J., concurs in part and dissents in part.

Savoie, J., concurs in part and dissents in part, for the reasons expressed by Judge Cooks, and for the additional reasons assigned.

Conery, J., concurs in part and dissents in part for the reasons expressed by Judges Savoie and Cooks, and for the additional reasons assigned.


WRIT GRANTED AND MADE PEREMPTORY;
EXCEPTIONS OF NO RIGHT OF ACTION GRANTED IN PART;
REMANDED FOR FURTHER PROCEEDINGS.

**Andre C. Gaudin**
**M. Joey Bernard**
**Burglass & Tankersley, LLC**
**5213 Airline Drive**
**Metairie, LA 70001**
**(504) 836-0422**
**COUNSEL FOR DEFENDANT/APPLICANT:**
**Kenneth Boone d/b/a Boone Trucking**

**Timothy W. Hassinger, T.A.**
**Patrick J. Schepens**
**Galloway, Johnson, Tompkins, Burr & Smith**
**3 Sanctuary Boulevard, Third Floor**
**Mandeville, LA 70471**
**(985) 674-6680**
**COUNSEL FOR DEFENDANT/APPLICANT:**
**Mark Isaiah Gordon**

**Charles S. Norris, Jr.**
**Christopher J. Norris**
**Norris Law Firm, LLC**
**P. O. Box 400**
**8 North Oak Street**
**Vidalia, LA 71373**
**(318) 336-1999**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
**Khristy Goins Rismiller, Tutrix for Daniel Goins**

**Colt J. Fore**
**D. Blayne Honeycutt**
**Fayard and Honeycutt**
**519 Florida Avenue, SW**
**Denham Springs, LA 70726**
**(225) 664-0304**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
**David Watts**

**Virgil Russell Purvis, III**
**Smith, Taliaferro & Purvis**
**407 Mound Street**
**Jonesville, LA 71343**
**(318) 339-8526**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
**Succession of Richard Stewart, Jr.**
**Richard Stewart, Sr.**
**Vera Anita Stewart**
**Raymond Kelly**
**Donna Kelly**

**J. Rock Palermo, III**
**Veron, Bice, Palermo**
**P. O. Box 2125**
**Lake Charles, LA 70602-2125**
**(337) 310-1600**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
 **Succession of Richard Stewart, Jr.**
 **Richard Stewart, Sr.**
 **Vera Anita Stewart**
 **Raymond Kelly**
 **Donna Kelly**

**Jeremy Z. Soso**
**Lambert & Nelson**
**701 Magazine Street**
**New Orleans, LA 70130**
**(504) 581-1750**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
 **Sheila Smith**

**Joe Meng**
**Attorney at Law**
**205 South Broadway, Suite A**
**Natchez, MS 39120**
**(601) 445-8111**
**COUNSEL FOR PLAINTIFF/RESPONDENT:**
 **Sheila Smith**

**Micah A. Gautreaux**
**Degan, Blanchard & Nash**
**6421 Perkins Road, Bulding C, Suite B**
**Baton Rouge, LA 70808**
**(225) 610-1110**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
 **Gemini Insurance Company**

**GREMILLION, Judge.**

This consolidated matter involves a dispute over who has a right of action to assert survival and wrongful death claims arising out of an auto accident and subsequent death of Richard Stewart Jr. (Stewart) and his minor children.[1] For the following reasons, we find the trial court erred in denying Defendants' exceptions of no right of action pertaining to the survival and wrongful death actions asserted by the Succession of Richard Stewart Jr., Raymond Kelly, and Donna Kelly. We further remand for proceedings consistent with this opinion to allow joinder of an indispensable party.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 1, 2015, on U.S. Highway 84 in Concordia Parish, an eighteen-wheeler truck driven by Mark Gordon and owned by Kenneth Boone d/b/a Boone Trucking was involved in a head-on collision with a vehicle being driven by Stewart. Stewart and his two minor children, George Stewart and Vera Cheyenne Stewart, were killed in the accident.

George and Vera Cheyenne were Stewart's biological children from a relationship with Brandi Hardie; however, Stewart and Hardie were never married. At the time of the accident, Raymond and Donna Kelly had custody of Vera Cheyenne, and Jimmy and Tammy Johnese had custody of George.

Stewart had two other biological children who were adults at the time of the accident: Daniel Goins and David Watts. Goins and Watts were born during Stewart's marriage to Lisa Watts Stewart, and they were given up for adoption. Goins was adopted by George and Joyce Goins, who are Stewart's uncle and aunt. Watts was adopted by his maternal grandparents, Mary and Jimmy Watts. At the

---

[1] This writ is consolidated with 17-809 and 17-811.

time of the accident, Stewart and Lisa were physically separated, but they had never legally divorced. It has been alleged that Lisa currently resides in a care facility in another state.

Following the accident, three separate survival and wrongful death actions arising out of Stewart's and the minor children's deaths were filed in the trial court. Two of these actions involve claims filed by or on behalf Stewart's adult biological children, Goins and Watts, who had been adopted by other family members during their minority.[2] The plaintiffs in the third action are: Stewart's Succession; Stewart's parents, Richard Stewart, Sr. and Vera Stewart; and Raymond and Donna Kelly (collectively, "the Stewart Plaintiffs").[3] All three actions were consolidated in the trial court.

In each of the three actions, Defendants Mark Gordon and Kenneth Boone d/b/a Boone Trucking filed exceptions of no right action, which the trial court denied. In connection with Watts' and Goins' survival and wrongful death actions arising from Stewart's death, the trial court found that:

> the cases of *Levy v. Louisiana,* 391 U.S. 68, (1968), and *Turner v. Busby,* 03-3444 (La. 9/9/04), 883 So.2d 412 are persuasive in holding that "it is the biological relationship and dependency which is determinative of the child's rights in these cases, and not the classification into which the child is placed by the statutory law of the State." Thus, the fact that Watts [and Goins] w[ere] adopted does not prevent [them] from bringing survival and wrongful death claims for the death of [Mr.] Stewart, [their] biological father.

Further, in connection with Watts' and Goins' survival and wrongful death actions arising from the deaths of their biological half-siblings, George and Vera

---

[2] *Khristy Goins Rismiller, Tutrix for Daniel Edward Goins v. Gemini Insurance Company, et al.*, Louisiana 7th Judicial District Court Docket Number 49,686; and *David Watts v. Mark Gordon, et al.*, Louisiana 7th Judicial District Court Docket Number 49,751.

[3] *Succession of Richard Stewart, Jr., et al. v. Mark Isaiah Gordon, et al.,* Louisiana 7th Judicial District Court Docket Number 49,832.

2

Cheyenne, the trial court found that the children's mother, Brandi Hardie, had abandoned the children during their minority, and, therefore, in accordance with La.Civ.Code arts. 2315.1 and 2315.2, she was deemed to have predeceased the children. The trial court concluded that Goins and Watts, as biological half-siblings, were allowed to assert survival and wrongful death claims arising out of the children's deaths. No specific reasons for the trial court's denial of Defendants' exceptions of no right of action can be found in the record.

Following the trial court's ruling, Defendants filed three separate writ applications with this court seeking review of the trial court's denial of their exceptions. We granted the writ applications and heard oral argument. This particular writ application involves the trial court's denial of Defendants' exception of no right of action pertaining to the claims of the Stewart Plaintiffs.

## ANALYSIS

In *Mississippi Land Co. v. S & A Properties II, Inc.*, 01-1623, pp. 2-3 (La.App. 3 Cir. 5/8/02), 817 So.2d 1200, 1202-03, we stated:

> Under La.Code Civ.P. art 927, a defendant may raise the peremptory exception of no right of action. An exception of no right of action has the function of determining whether the plaintiff has any interest in the judicially enforced right asserted. *St. Jude Medical Office Bldg., Ltd. Partnership v. City Glass and Mirror, Inc.*, 619 So.2d 529 (La.1993). The function of this exception is to terminate the suit brought by one who has no judicial right to enforce the right asserted in the lawsuit. *Yolanda F.B. v. Robert D.R.*, 00-958 (La.App. 3 Cir. 12/6/00); 775 So.2d 1107. The determination of whether a plaintiff has a right of action is a question of law. *Horrell v. Horrell*, 99-1093 (La.App. 1 Cir. 10/6/00); 808 So.2d 363, *writ denied* 01-2546 (La.12/7/01); 803 So.2d 971. Accordingly, we review exceptions of no right of action *de novo*. *Id.*

A survival action "is transmitted to beneficiaries upon the victim's death and permits recovery only for the damages suffered by the victim from the time of injury

3

to the moment of death." *Taylor v. Giddens,* 618 So.2d 834, 840 (La.1993). Survival actions are governed by La.Civ.Code art. 2315.1, which states:

A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:

(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.

(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.

(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.

(4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.

B. In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the offense or quasi offense, may be urged by the deceased's succession representative in the absence of any class of beneficiary set out in Paragraph A.

C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.

D. As used in this Article, the words "child", "brother", "sister", "father", "mother", "grandfather", and "grandmother" include a child, brother, sister, father, mother, grandfather, and grandmother by adoption, respectively.

E. For purposes of this Article, a father or mother who has abandoned the deceased during his minority is deemed not to have survived him.

A wrongful death action is a separate action that "does not arise until the victim dies and it compensates the beneficiaries for their own injuries which they suffer from the moment of the victim's death and thereafter." *Taylor*, 618 So.2d at 840. Louisiana Civil Code Article 2315.2 provides as follows with respect to a wrongful death action:

4

A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:

(1) The surviving spouse and child or children of the deceased, or either the spouse or the child or children.

(2) The surviving father and mother of the deceased, or either of them if he left no spouse or child surviving.

(3) The surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving.

(4) The surviving grandfathers and grandmothers of the deceased, or any of them, if he left no spouse, child, parent, or sibling surviving.

B. The right of action granted by this Article prescribes one year from the death of the deceased.

C. The right of action granted under this Article is heritable, but the inheritance of it neither interrupts nor prolongs the prescriptive period defined in this Article.

D. As used in this Article, the words "child", "brother", "sister", "father", "mother", "grandfather", and "grandmother" include a child, brother, sister, father, mother, grandfather, and grandmother by adoption, respectively.

E. For purposes of this Article, a father or mother who has abandoned the deceased during his minority is deemed not to have survived him.

### Claims Asserted by Raymond and Donna Kelly

At the time of the accident, the Kellys had legal custody of Vera Cheyenne. Neither La.Civ.Code art. 2315.1 nor 2315.2 contemplate the legal custodian of a minor to be within a class of persons with a right to assert a survival or wrongful death action arising from the minor child's death. Therefore, the trial court erred in denying Defendants' exceptions as to Raymond and Donna Kelly's claims.

5

**<u>Claims Asserted by Richard Stewart Sr. and Vera Stewart</u>**

*A. Survival Action and Wrongful Death Claims of Biological Children Given Up for Adoption*

Preliminary to the claims of the Stewarts, we will address the issue of what, if any, rights Goins and Watts have as biological relations of the deceased who were given up for adoption. For the reasons that follow, we find that Goins and Watts have no assertable claims for their biological father's death nor their biological half-siblings' deaths; therefore, the trial court erred in denying Defendants' no rights of action as to these claims made by Watts and Goins.

It has long been held that children given up in adoption are divested of their legal rights except as to those relating to inheritance. *See* La.Civ.Code art. 199. Survival actions and wrongful deaths actions are not part of an inheritance. *See Domingue v. Carencro Nursing Home, Inc.*, 520 So.2d 996 (La.App. 3 Cir. 1987), *writ denied*, 522 So.2d 565 (La.1988). Survival and wrongful deaths actions are statutorily created remedies in tort exclusively available to certain listed beneficiaries. *Nelson v. Burkeen Const. Co.,* 605 So.2d 681 (La.App. 2 Cir. 1992). Children given up for adoption lose their legal rights to bring claims under La.Civ.Code. arts. 2315.1 and 2315.2. *Domingue*, 520 So.2d 996. *See also Hernandez v. State, DOTD*, 02-162, 02-163 (La.App. 4 Cir. 10/16/02), 841 So.2d 808, *writs denied*, 03-261, 03-307 (La. 4/25/03), 842 So.2d 399, 640 So.2d 1349.

*B. Wrongful Death and Survival Action Arising out of Stewart's Death*

Stewart's parents, Richard Stewart, Sr. and Vera Stewart ("the Stewarts") have a right to assert a survival action and a wrongful death action arising out of Stewart's death only if he left no surviving spouse or children. La.Civ.Code arts. 2315.1(A)(2) and 2315.2(A)(2). Stewart was survived by Lisa Watts Stewart, to

whom he was legally married. Therefore, the Stewarts are precluded from asserting wrongful death and survival actions.[4]

### *C. Wrongful Death and Survival Action Arising out of the Children's deaths*.

The Stewarts, who are the grandparents of the George and Vera Cheyenne, have a right to assert survival and wrongful death actions arising out of their deaths only if the children left "no spouse, child, parent, or sibling surviving." La.Civ.Code. arts. 2315.1(A)(4) and 2315.2(A)(4). The parties do not suggest that the children's father survived the children. Further, as previously noted, the children given up for adoption, Watts and Goins, have no assertable claims. It is, however, undisputed that the children's biological mother, Brandi Hardie, is living; nevertheless, the trial court found that she had abandoned the children as contemplated by La.Civ.Code. arts. 2315.1(E) and 2315.2(E), and therefore it considered Hardie to have predeceased the children. Although there was significant evidence suggesting that Hardie did abandon her children, she was not made a party to the proceeding. As an indispensable party she must be joined and cited and served with notice and given an opportunity for a hearing on this issue. La.Code Civ.P. arts. 644 and 645. If, after the hearing, the trial court finds that Hardie has abandoned her children, the Stewarts would have a right to pursue the survival and wrongful death claims.

## The Succession's Claims

### *A. Wrongful Death Actions Arising out of Stewart's and the Children's Deaths*:

The Succession of Richard Stewart, Jr. asserted wrongful death claims arising out of Stewart's and the minor children's deaths. The Succession is not within the

---

[4] Although immaterial to whether the Stewarts have wrongful death or survival action claims because Stewart was survived by a legal spouse, the issue of whether Goins and Watts, who were given up for adoption during their minority, have survival and/or wrongful deaths claims in addition to those of their biological mother, Lisa Watts Stewart, is addressed.

express classes of persons entitled to bring a wrongful death action under La.Civ.Code art. 2315.2. Therefore, Defendants' exceptions of no right of action should have been granted as to these claims.

## B. Survival Actions Arising out of Stewart's and the Children's Deaths:

The Succession also asserted a survival action under La.Civ.Code art. 2315.1 arising out of Stewart's and the children's deaths. A succession, through its representative, has a right to assert a survival action only "in the absence of a beneficiary set out in [La.Civ.Code. art. 2315.1(A)]." La.Civ.Code. art. 2315.1(B). Lisa Watts Stewart has the right to assert a survival action for Stewart's death; therefore, the Succession is precluded from asserting a claim. Hardie has a survival action claim if it is found that she has not abandoned the children. If she has abandoned them, the claim belongs to the grandparents, the Stewarts. Thus, the Succession has no claims for survival actions for Stewart, George, or Vera Cheyenne, and Defendants' exceptions as to these claims should have been granted.

### CONCLUSION

Lisa Stewart Watts is the only party with viable claims for a survival action and wrongful death claim for the death of Richard Stewart, Jr. We remand to the trial court in order that Brandie Hardie be joined as an indispensable party for a determination of whether she abandoned the children. If she abandoned the children, Richard Stewart, Sr. and Vera Stewart are the proper parties to assert the survival and wrongful death actions for the deaths of George Stewart and Vera Cheyenne Stewart.

Accordingly, we grant Defendants' writ application, make it peremptory, and reverse the trial court's denial of Defendants' exceptions of no right of action as to the claims asserted by the Succession of Richard Stewart, Jr., Raymond Kelly,

Donna Kelly, and Richard Stewart Sr. and Vera Stewart as it pertains to wrongful

death and survival action claims for Stewart. Costs of these proceedings are assessed

to the Succession of Richard Stewart, Jr., Raymond Kelly, and Donna Kelly.

**WRIT GRANTED AND MADE PEREMPTORY;**
**EXCEPTIONS OF NO RIGHT OF ACTION GRANTED IN PART;**
**REMANDED FOR FURTHER PROCEEDINGS.**

SUCCESSION OF RICHARD STEWART, JR. ET. AL.

VERSUS

MARK ISIAH GORDON, ET. AL.

**COOKS, J. Concurs in part and dissents in part.**

The majority attempts to remove Daniel Edward Goins (Goins) and David Watts (Watts), decedent's surviving children given up for adoption, from the list of beneficiaries expressly included by the legislature in the survival and wrongful death actions provided in La.Civ.Code articles 2315.1 and 2315.2 respectively. It does this while readily acknowledging that such children are entitled under our law to inherit from their biological parent as well as their adopted parent. As I explain more fully below, I cannot imagine any reason nor rationale to exclude legitimate biological children of a decedent from recovering these types of damages when the legislature did not, and in my view could not do so under the settled decisions of the United States Supreme Court and the Louisiana State Supreme Court, as well as the applicable provisions of the Louisiana Civil Code. The majority also improperly denies these children their right to recover damages for the loss of their half-siblings in the absence of any surviving spouse, child or parent, contrary to the law and jurisprudence. La.Civ.Code art. 2315.1(A)(3); La.Civ.Code art. 2315.2(A)(2); and *Gibbs v. Delatte*, 05-821 (La.App. 1 Cir. 12/22/05), 927 So.2d 1131, *writ denied*, 06-198 (La. 4/24/06), 926 So.2d 548.[1] *See also* La.Civ.Code art. 199. It remains to

---

[1] The words "brother" and "sister" as denoted in [La.Civ.Code] arts. 2315.1 and 2315.2 include half-brothers and half-sisters. *See Ledet v. State, Dep't of Health and Human Res.,* 465 So.2d 98, 102 (La.App. 4 Cir.), *writ denied,* 468 So.2d 1211 (La.1985).

be seen whether Brandie Hardie abandoned her children thus prompting us to remand the case for the reasons stated by the majority. In the event the trial court finds she abandoned her children and would therefore be precluded from recovering under the survival and wrongful death Articles, then these half-siblings would be entitled to proceed.

Children-given-in-adoption are among the named beneficiaries who enjoy the right to bring an action under La.Civ.Code arts. 2315.1and 2315.2 for the death of their biological father and half-siblings. Louisiana Civil Code Article 2315.1(emphasis added), entitled "Survival Action" provides in pertinent part:

> A. If a person who has been injured by an offense or quasi offense dies, the right to recover all damages for injury to that person, his property or otherwise, caused by the offense or quasi offense, shall survive for a period of one year from the death of the deceased in favor of:
>
> (1) The **surviving spouse and child or children of the deceased**, or either the spouse or the child or children. . .
>
> (3) The **surviving brothers and sisters of the deceased**, or any of them, if he left no spouse, child, or parent surviving. . .
>
> B. In addition, the right to recover all damages for injury to the deceased, his property or otherwise, caused by the offense or quasi offense, may be urged by the deceased's succession representative in the absence of any class of beneficiary set out in Paragraph A. . .
>
> D. As used in this Article, the words "child", "brother", "sister", "father", "mother", "grandfather", and "grandmother" include a child, brother, sister, father, mother, grandfather, and grandmother by adoption, respectively.
>
> E. For purposes of this Article, a father or mother who has abandoned the deceased during his minority is deemed not to have survived him.

Louisiana Civil Code Article 2315.2(emphasis added), entitled "Wrongful Death Action" provides in pertinent part:

> A. If a person dies due to the fault of another, suit may be brought by the following persons to recover damages which they sustained as a result of the death:

---

*Gibbs*, 927 So. 2d at 1139–40.

2

(1) The **surviving spouse and child or children of the deceased**, or either the spouse or the child or children . . .

(2) The **surviving brothers and sisters of the deceased**, or any of them, if he left no spouse, child, or parent surviving. . .

D. As used in this Article, the words "child", "brother", "sister", "father", "mother", "grandfather", and "grandmother" include a child, brother, sister, father, mother, grandfather, and grandmother by adoption, respectively.

E. For purposes of this Article, a father or mother who has abandoned the deceased during his minority is deemed not to have survived him.

The meaning of the simple words "child or children" seem clear enough to me, but the legislature does not leave us to our own definition of such "terms of law." In Book III, Title XXV of the Civil Code, under the heading "Of the Signification of Sundry Terms of Law Employed in This Code" Article 3506 (emphasis added) specifically provides:

> Whenever the terms of law, employed in this Code, have not been particularly defined therein, **they <u>shall</u> be understood as follows:**
>
> . . .
>
> 8. Children. Under this name are included those persons born of the marriage, those adopted, and those whose filiation to the parent has been established in the manner provided by law, as well as descendants of them in the direct line.
>
> A child born of marriage is a child conceived or born during the marriage of his parents or adopted by them. . .

In both La.Civ.Code Article 2315.1(D) and 2315.2(D) the legislature provides that the word "child" as used in these articles, along with other enumerated terms of consanguinity, "include[s] "a child by adoption." This extra provision makes no change in the definition of child(ren) provided in La.Civ.Code art. 3506(8) but merely repeats the definition including that term in the list of other terms that are not defined in La.Civ.Code Art. 3506, i.e "brother, sister, father, mother, grandfather, and grandmother." Thus, by the express provision of the Civil Code the term of law

3

"child or children" as used in La.Civ.Code arts. 2315.1 and 2315.2 "**shall be understood**" to mean **children born of marriage**. The legislature in La.Civ.Code art. 3506 does not except or remove children born of marriage given up for adoption from inclusion in this "term of law" and this court is without authority to do so. It is worthy of note that, as the comment to La.Civ.Code art. 3506 points out, in 1979 the legislature changed the definition of children to exclude illegitimate children. Subsequently, the legislature repealed that change. The article was last amended in 2004 and to date there has been no change to the article to exclude children-given-in-adoption. There is no question here that both Goins and Watts are children born of the marriage between Richard Stewart, Jr. and Lisa Watts Stewart. The majority acknowledges this fact. For me, the inquiry should end here, but alas the majority travels a different path.

The majority says: "[i]t has long been held that children given up in adoption are divested of their legal rights except as to those relating to inheritance," citing La.Civ.Code art. 199, and a number of appellate court cases in support of that proposition. This perfunctory summation of the law ignores landmark United States Supreme Court decisions, Louisiana State Supreme Court decisions, and relies on the language in the prior version of the Civil Code Article (La.Civ.Code art. 214) regarding the effect of adoption which stated: "... the adopted person and his lawful descendants are relieved of all of their legal duties and divested of all of their legal rights with regard to the blood parent or parents and other blood relatives, except the right of inheritance from them." *Nelson v. Burkeen Const. Co*., 605 So. 2d 681, 683 (La.App. 2 Cir. 1992), *writ denied*, 16-1490 (La. 11/15/16), 209 So.3d 781. The current Civil Code provision setting forth the effect of adoption is found in La.Civ.Code art. 199 (emphasis added), which replaced the previous language with the following:

4

Upon adoption, the adopting parent becomes the parent of the child for all purposes and the filiation between the child and his legal parent is terminated, *except as otherwise provided by law*. The adopted child and his descendants retain the right to inherit from his former legal parent and the relatives of that parent.[2]

The Comments to La.Civ.Code art. 199 (emphasis added) note that *"[a]mong the exceptions* to the severance of the *legal relationship"* are the right of inheritance; retention of the legal relationship between the adopted child and his legal parent who is married to the adoptive parent; and the right of grandparents (parent of the legal parent) to have visitation with the child. These are only some of the *exceptions* to the effect of the termination of the "legal relationship" resulting from adoption. The majority's position ignores the qualifier "except as provided by law." The legislature has expressly "provided by law" the beneficiaries permitted recovery in the survival and wrongful death actions. Both La.Civ.Code art. 2315.1(A)(1) and La.Civ.Code art. 2315.2(A)(1) specifically provide that the "surviving spouse and **child or children of the deceased**" are first in preference to recover damages under these provisions. No distinction is made regarding the biological child or children of the decedent as legitimate, illegitimate, legitimated, and/or children-given-in-adoption. Moreover, the legislature *specifically includes the only non-biological progeny of the decedent by adding a provision to expressly include adopted children.* The article also includes an express prohibition against a father or mother who has abandoned a deceased "child" "during his minority" from asserting either a survival action or wrongful death claim for such child. Presumably this would include *any* deceased child of the parent whether they were abandoned by being given up in adoption or by simply not providing any support for the child for the requisite period of time. This provision insures equal treatment to *all children* abandoned by their biological parent(s) without reference to other laws. Additionally, La.Civ.Code art.

---

[2] Louisiana Civil Code Article 178 defines filiation as: "… the legal relationship between a child and his parent."

2315.1(B) specifically provides for an action by the decedent's estate, in the absence of a surviving spouse, child, mother, father, or sibling. This is so because the survival action recognizes recovery for damage suffered by the decedent which, though it might not be ascertained until after the person's death, is nonetheless part of his/her patrimony. Even the majority acknowledges adopted children enjoy the right to inherit from their biological parent. These children also enjoy the right to inherit from their half-siblings. *See* La.Civ.Code art. 199. It is the prerogative of the legislature to provide for devolution of a person's estate by means other than through succession proceedings.[3] It is not within their authority to legislatively deny the right to accede to the decedent's property accorded all children of a decedent, including, by specific legislation, children-given-in-adoption for to do so would run afoul of our state and federal constitutional right to equal protection under the law.[4] The legislature makes no such attempt in the survival and wrongful death provisions of the Civil Code and the majority errs in making it so.

Louisiana Civil Code Article 2315.1 provides a unique means for the legislatively created claim of the decedent to devolve to his family outside ordinary

---

[3]      Louisiana law provides for means of other types of property of the decedent to devolve to his family outside of succession proceedings such as life insurance proceeds.

[4]

>   No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

La. Const. art. I, § 3.

>   All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

6

succession proceedings by designating a hierarchy of beneficiaries which expressly includes any surviving "*child or children*" of the deceased. There is absolutely no indication in the language of Article 2315.1 that indicates the legislature intended to exclude children-given-in-adoption, who are otherwise entitled to inherit the patrimony of their biological parent, from being a beneficiary of this portion of the decedent's "estate." The article merely provides a mechanism outside the normal succession procedure which legal scholars tell us was devised as a means to encourage the family members left behind to pursue the decedent's claim when he dies either during the pendency of litigation or before the litigation even gets underway. *See* Collin S. Buisson, *Juneau v. State Ex Rel. Department of Health and Hospitals-Killed by the Calendar: A Seemingly Unfair Result but A Correct Action*, 91 Tul. L. Rev. 43 (2017).

In *Jenkins v. Mangano*, 00-790 p. 3 (La. 11/28/00), 774 So.2d 101, 103(emphasis in original) the Louisiana State Supreme Court, specifically addressed the question of "Who is a *Child* under 2315.2" (The rationale is even more applicable to article 2315.1.):

> In *Chatelain*[*v. State, DOTD*, 586 So.2d 1373 (La. 1991)], this court determined that **the critical requirement for classification of a person as a child under Article 2315.2 is the biological relationship between the tort victim and the child.** *Warren v. Richard,* 296 So.2d 813, 814 (La.1974). Once the biological relationship is established, an inquiry must be made as to whether the child is classified as legitimate or illegitimate. Civil Code Art. 178. It is of no consequence that the child is legitimate or illegitimate for purposes of deciding whether the child may bring an action under Article 2315, **all children have the right to bring an action for wrongful death and survival action.** See *Levy v. Louisiana,* 253 La. 73, 216 So.2d 818 (1968).

The supreme court concluded in *Jenkins* that because the "tort victim [was] survived by a *child*" the surviving parents of the victim could not proceed to recover in a survival or wrongful death action even though the child "did not timely file a filiation action." *Jenkins*, 774 So.2d at 105 (emphasis added). The child, said the high court, "is not precluded from raising her existence as a defense as long as the

defendant proves, by clear and convincing evidence, the child was acknowledged by the tort victim before death." *Id.* In *Warren v. Richard*, 296 So.2d 813, p. 815 (La. 1974) our state supreme court faced the question "can an illegitimate child recover for the wrongful death of her biological father when, at the same time, she is also the legitimate child of another man under the law?" The supreme court answered in the affirmative, constrained, it said, by the controlling decisions of the United States Supreme Court. We are no less constrained by these decisions of the highest court in the land and in this state. The supreme court explained that "**it is the dual paternal parentage of this child—one father created by nature, another created by law**—which poses the problem" to be resolved. *Id.* The present case presents the same problem for resolution—dual paternal parentage of the child—one father created biologically "by nature" and one "created by law"—adoption. The court in *Warren* included a thorough review of the decisions of the United States Supreme Court mandating the constitutional outcome of the court's decision and it is worth quoting at length the cases explained therein:

> In applying the Equal Protection Clause of the United States Constitution, the United States Supreme Court decided in a case where an illegitimate child was suing for damage for the wrongful death of her mother, 'that it is invidious to discriminate against them (illegitimate children) *when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done the mother*.' In this holding, striking down Louisiana's statutory scheme which had theretofore barred recovery by illegitimate children for the wrongful death of their parents, **the Court has, as a constitutional proposition, apparently substituted a biological classification for the legal classification** Louisiana had long observed. *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968).

> Again in *Glona v. American Guarantee & Liability Insurance Co.*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), handed down on the same day as the *Levy* Case, the United States Supreme Court decided that it would be a denial of equal protection to deny a mother the right to recover for the wrongful death of her child simply because the child was born out of wedlock. The opinion declared: '**To say that the test of equal protection should be the 'legal' rather than the biological relationship is to avoid the issue.'**

*Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), followed four years after. There the United States Supreme Court approved a claim for workmen's compensation benefits of a dependent, unacknowledged, illegitimate child which had been denied by the Louisiana courts. *Stokes v. Aetna Casualty and Surety Co.*, 232 So.2d 328 (La.App.1969), aff'd 257 La. 424, 242 So.2d 567. In an opinion authored by Mr. Justice Powell it was held that, by relegating the unacknowledged illegitimate to a lower priority in the recovery scheme, the Louisiana Workmen's Compensation Act thereby denied him equal protection of the law. The Court stated the basis for its decision thusly:

> The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, *no child is responsible for his birth* and penalizing the illegitimate child is an ineffectual—as well as unjust—way of deterring the parent.

Finally, in its latest decision on the subject in *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the United States Supreme Court said:

> We have held that under the Equal Protection Clause of the Fourteenth Amendment a State may not create a right of action in favor of children for the wrongful death of a parent and exclude illegitimate children from the benefit of such a right. *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968). Similarly, we have held that illegitimate children may be not (sic) excluded from sharing equally with other children in the recovery of workmen's compensation benefits for the death of their parent. *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Under these decisions, a State may not invidiously discriminate against illegitimate children by denying them substantial benefits *accorded children generally*.

*To say that the child Iris had no right to recover for her biological father's wrongful death because the law presumed her to be the legitimate child of another man would run counter to the principles established in the decisions of the United States Supreme Court referred to above and* **would ignore the existence of the child's biological father**.

For the purpose of this decision, it is not necessary that we determine to which class of illegitimate filiation this child belongs. **It suffices that we simply determine that the child is in fact the**

9

**biological child of the decedent** David Lee. And, since we see no real dispute on this point, the case is in a posture for decision. *Babineaux v. Perni-Bailey Brilling Co. et al.*, 261 La. 1080, 262 So.2d 328 (1972). *The fact that the law considers the child to be the legitimate child of Albert Gray will not alter the result.* La. Civil Code art. 184.

Here the child was registered as the child of the decedent, recognized as such by him, educated in his name and sworn to be his child by the mother. The fact that the child is by Louisiana's statutory scheme made the legitimate child of Albert Gray cannot deprive her of a right which illegitimate children generally may have for the wrongful death of their biological fathers. **As we understand the rationale of the decisions of the United States Supreme Court, it is the biological relationship and dependency which is determinative of the child's rights in these cases, and not the classification into which the child is placed by the statutory law of the State.**

*The argument is made that this result will accord more rights to this child than are ordinarily accorded the legitimate child—that she will be able to recover for the death of her biological father as well as for the death of Albert Gray, because the law deems her his legitimate offspring. However, this concept is not unique to our law. It is specifically provided that the adopted child, upon his adoption, is not divested of his right to inherit from his blood parents while at the same time he inherits from the adoptive parent.* La. Civil Code art. 214.

We are not umindful of the problems a logical extension of these holdings may create, such as a child in these circumstances recovering from both fathers for support and maintenance, or, conversely, requiring the child to support both fathers in a proper case. La. Civil Code arts. 227, 229. ***But we are influenced in this decision by the constitutional principles announced by the United States Supreme Court to which we must adhere.***

*Warren*, 296 So. 2d 816–17.

The same rationale applies here. The dual parentage question is answered in the affirmative for the same reasons. These children-given-in-adoption, like Iris, had **one father created by nature, another created by law,** and according to the United States Supreme Court, and our state supreme court, the blood relationship of these children and their biological father is the "determinative factor" in deciding whether "child" as used in La.Civ.Code art. 2315.1 and 2315.2 includes surviving children-given-in-adoption as beneficiaries entitled to recover for the loss of their parent. Consistent with this rationale is the definition of children as a term of law used in the Civil Code provided in La.Civ.Code art. 3506 which includes children

10

born of marriage. It is not the child-given-in-adoption's fault it was born, and it is not its fault it was given up for adoption any more than it is the illegitimate child's fault it was born out of marriage and not legitimated by its parent. I find it deeply troubling that under the majority's holding, a *legitimate biological child* given up for adoption would not enjoy the same rights as an *illegitimate biological* child who is also a legitimate legal child of another parent, for the loss of the same biological parent. I believe such an outcome is not constitutionally sound in light of the United States Supreme Court's and Louisiana State Supreme Court's application of the Equal Protection Clause of the U.S. Constitution and our state constitution in the cases discussed herein. The two high courts tell us that the biological blood tie is important between all biological offspring and their deceased parent. The language of La.Civ.Code arts. 2315.1 and 2315.2 cannot be read to exclude a child-given-in-adoption when the legislature made no such provision. The inclusive language "**surviving child or children of the deceased**" encompasses *all* of the surviving biological children of the decedent—legitimate, illegitimate, legitimated, and given-in-adoption—and the non-biological adopted child. *See Jenkins*, Supra. and La.Civ.Code art. 3506(8).

Louisiana Civil Code Article 2315 provides the foundation for recovery of damages for "every act whatever of man that causes damage to another." It also provides:

> Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.

La.Civ.Code art. 2315(B).

Louisiana Code of Civil Procedure Article 801 provides for the substitution of a legal successor for a deceased party:

> When a party dies during the pendency of an action which is not extinguished by his death, his legal successor may have himself

substituted for the deceased party, on ex parte written motion supported by proof of his quality.

As used in Article 801 through 804, "legal successor" means:

(1) The survivors designated in Articles 2315.1 of the Civil Code, if the action survives in their favor; and

(2) Otherwise, it means the succession representative of the deceased appointed by a court of this state, if the succession is under administration therein; or the heirs and legatees of the deceased, if the deceased's succession is not under administration therein.

Thus, the provisions of the Civil Code and the Code of Civil Procedure are internally consistent when it comes to the treatment of surviving beneficiaries and takes into consideration the individuals covered in both the survival and wrongful death actions. The majority's prohibition against recovery by children-given-in-adoption for the damages done to their biological parent, or the loss personally suffered as the result of their biological parent's death (loss of consortium, society, etc.), runs afoul of this scheme and will produce inconsistent results. For example, in the case in which the child-given-in-adoption's parent pursuing litigation involving a heritable right or damage occasioned other than by an offense or quasi offense provided in article 2315.1 and 2315.2, dies during the course of litigation, such child, as an heir of decedent recognized by law, would be a proper party to be substituted in the litigation under La.Code.Civ.P. art 801. The majority must be in agreement with this assessment as it acknowledges that a child-given-in-adoption inherits from its biological parent. But, according to the majority's interpretation of the term "surviving child or children" in Articles 2315.1 and 2315.2, this same child would be precluded from recovering for its parent's loss, or rather from continuing the pursuit of a survival claim for injury resulting in death under Article 2315.1, and from pursuing its own personal loss as the result of the wrongful death of its parent under Article 2315.2. Such an arbitrary and inequitable result is not consistent with constitutional notions of equal protection and fundamental fairness. But the law,

12

properly applied, results in no such inequity or disparity. The cases cited by the majority opine that the legislature could have expressly listed children-given-in-adoption in Articles 2315.1 and 2315.2 had it intended to include such children in the list of beneficiaries. In my view, the legislature could not have been clearer when it provided that the "surviving spouse and **child or children of the deceased**" constituted the primary beneficiary(ies) priming all others. Likewise, the legislature could not be clearer in the express definition of the legal term "children" when used in the Civil Code as provided in La.Civ.Code art. 3506(8). The United States Supreme Court, as recognized by our state supreme court in *Warren* in 1974, had made it clear, prior to the legislative change in 1986 that enacted articles 2315.1 and 2315.2 legislatively establishing the survival and wrongful death actions that, as the *Jenkins* court put it "**all children have the right to bring an action for wrongful death and survival action,**" *Jenkins*, 774 So.2d at 103. The courts did not include any modifier or exception to that pronouncement. It is, as the United States Supreme Court has held, the biological relationship that is determinative of a child's right to recover for the loss of its blood parent, *See Levy v. Louisiana*, 391 U.S. 73, 88 S.Ct. 1515 (1968); *Glona v. American Guarantee & Liability Insurance Co.*, 391 U.S. 73, 88 S.Ct. 1515 (1968); and *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400 (1972), "not the classification into which the child is placed by the statutory law of the State." *Warren*, 296 So.2d at 816-817, relying on *Levy*, *Glona* and *Weber*. And as the state supreme court said: "to say that [a] child [has] no right to recover for her biological father's wrongful death because the law presumed her to be the legitimate child of another man would run counter to the principles established in the decisions of the United States Supreme Court [] and **would ignore the existence of the child's biological father**." *Id*. How can it be any less so for these surviving legitimate biological children given up for adoption? It may well be that a child-given-up-in-adoption may not incur the same degree of damage as

13

another offspring which the decedent was caring for at the time of his death, but the degree of loss is not the controlling factor for entitlement to recovery. That speaks only to quantum which will surely vary according to each child's personal relationship and/or dependency on the deceased parent irrespective of the status of the biological child as illegitimate, legitimate, legitimated, given-in-adoption or of the non-biological adopted child.

It may be of further help in understanding the correctness of my position to examine the legislative history and purpose of La.Civ.Code arts. 2315.1 and 2315.2.

In order to fully understand the purpose of an article 2315.1 survival action, it is helpful to look at two revisions. In the 1960 Code revisions, the legislature, for the first time, made a distinction between property and personal damages. The Code allowed for the right of action and proceeds from property damage suits to travel through ordinary successions law, but the right to maintain the survival action for personal damages was only given to an exclusive list of people laid out in article 2315. This meant that there could be a "split" created in the cause of action. For example, if A were in a car crash and began a suit for both damages to his car and to his person but died soon after, the case would be split. The suit for damages to his property would go to his heirs through normal successions law, but the suit for damages to his person would be given to the specific beneficiaries listed in article 2315. However, this changed with the 1986 revisions to the Civil Code.

In the 1986 revisions, the legislature revised the Code, so that the separate rights to property damage and personal damage no longer exist. Through the creation of article 2315.1, the legislature made clear that rights of action for damage to both the decedent's person and property were to be completely separate from other successions law and instead should be governed by article 2315.1. Therefore, the legislative history of survival actions would seem to indicate that the legislature did not intend to have the proceeds from the survival action suit go through the succession, but rather go to the descendents listed in article 2315.1 . . .

Louisiana courts have held that survival actions and wrongful death actions are ruled by specific laws, not by general laws of successions and inheritance. In *Estate of Burch v. Hancock Holding Co.*, the Louisiana First Circuit stated that "wrongful death and survival actions ... are not subject to the law[s] of marriage, of parent and child, of inheritance, [and are not] required to conform to civil law concepts." The court went on to state that "[n]either the survival action nor the wrongful death action provide[s] rights that are transmitted from the tort victim to the victim's heirs in an inheritance sense"—meaning neither right "pass[es] through the victim's succession." Instead, both rights are passed down to the "specified survivors" of a victim's family

14

via the corresponding Civil Code article (i.e., article 2315.1 or 2315.2). The court held that when considering a survival action, courts should look to the Civil Code, not other areas of law.

This type of carving out is not unique to survival actions and wrongful death actions. There are many other examples where the Legislature has specifically excluded certain property or rights from passing through the succession and being governed by ordinary successions law. For example, life insurance payments that are payable to a named beneficiary are excluded from the succession of the decedent.

Collin S. Buisson, *Juneau v. State Ex Rel. Department of Health and Hospitals-Killed by the Calendar: A Seemingly Unfair Result but A Correct Action*, 91 Tul. L. Rev. 43, 45–47 (2017).

In *Juneau v. State ex rel. Department of Health & Hospitals*, 15-1382 p. 8 (La. App. 1 Cir. 7/7/16), 197 So. 3d 398, 403, *writ denied*, 16-1490 (La. 11/15/16), 209 So. 3d 781, the first circuit agreed with this analysis:

The proceeds from a survival action should be excluded from the estate of the decedent if there exists a survivor under Article 2315.1. Indeed, it is clear ... that the deceased may have property rights that do not go through the "succession process." Furthermore, Article 801 of the Louisiana Code of Civil Procedure specifically provides that a "legal successor" includes *survivors* designated in Article 2315.1 of the Civil Code, when the action survives in their favor. Albeit, one should consider the intent of the deceased as clearly expressed in his last will and testament, but the United States Supreme Court, in *Boggs v. Boggs,* [520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) ], held that legislative acts (whether federal or state) govern the disposition or transmission of certain assets, regardless of a testator's attempt to divert them.

The provisions of Article 2315.1 point to the conclusion that the legislature intended for the survival action to be "self-contained" and unaffected by the succession distribution laws. The cases involving this situation clearly hold that a right of action does not pass through a victim's succession to be transmitted to his heirs as an inheritance. Instead, the cause of action devolves exclusively upon the specially designated classes of beneficiaries or survivors set forth in Article 2315.1.

Warren L. Mengis, *The Article 2315.1 Survival Action: A Probate or Non–Probate Item,* 61 La. L. Rev. 417, 422 (2001) (emphasis added) (footnotes omitted).

Thus, it should be clear, the legislature did not enact La.Civ.Code arts. 2315.1 and 2315.2 with any intention of changing Louisiana's inheritance laws pertaining to children-given-in-adoption, but merely established a separate mechanism for beneficiaries to directly lay claim for both the damages due their biological parent as part of his patrimony and damages incurred individually by virtue of the loss of one's own flesh and blood regardless of legal definitions of the "relationship" of child and parent at the time of the parent's death.

> There are key differences between "survival actions" and "wrongful death actions," including how and why they are passed on to descendants. Both actions result from a tortious incident, but the damages awarded are meant to compensate for different types of injury. A survival action, codified in article 2315.1, is intended to "compensate[] the victim for the pain and suffering he endures until the time of his death." A survival action "does not die with the victim" and is instead passed down to specific descendants via article 2315.1. However, in order to be able to recover any proceeds from a survival action, the "beneficiary or heir *must survive* the tort victim."

> Conversely, a wrongful death action, codified in article 2315.2, is not intended to compensate the now deceased party who experienced the physical harm. It is intended to give monetary compensation to specific family members who have suffered their own loss (loss of financial support, loss of consortium, etc.) through the death of the injured party. In a wrongful death action, the family members are attempting to recover for their own personal loss created by the death of the victim, not for the victim's pain and suffering. Thus, whereas a survival action is created at the time of the *injury* to the victim, a wrongful death action is only created upon the *death* of the victim.

Buisson, 91 Tul. L. Rev. at 46-7.

As Buisson explains, "survival actions were created to ensure that when a tort victim died, his claim did not die with him" and that it "… belonged to the injured party and, subsequent to his or her death, is brought by a listed person who is substituted for the decedent in accordance with La. C.C. art. 2315.1." Buisson, 91 Tul. L. Rev. at 50. Further, as he points out "[t]he wrongful death action [] is particular to each designated member of the beneficiary class. The value of the claim will vary, depending upon the relationship of the claimant to the decedent." *Id.* There would be no legal basis to exclude any legal heir from recovery in the survival

16

action and there is no indication the legislature intended to do so.  In fact, I reiterate, the legislature took the extra step to insure adopted children, the only non-biological progeny of the decedent, would not be excluded from the meaning of "child or children."  There is also no reason to exclude any of the decedent's children, biological or adopted, from the list of beneficiaries entitled to recover for their own loss occasioned by the death of their biological or adoptive parent, and once again, the legislature made clear that the only non-biological progeny of the decedent, his adopted child, is entitled to bring the wrongful death action, too.  The majority's opinion offers no rationale or basis for reading into these code provisions language that is simply not there nor does it offer a reasoned explanation as to why it should ignore the United States Supreme Court and our State Supreme Court's fundamental proposition that it is the biological relationship that controls matters of dual parentage, *Warren*, Supra., and their express holdings that "**all children have the right to bring an action for wrongful death and survival action.**" *Jenkins*, 774 So.2d at 103.  For these reasons I dissent from the majority's holding that children-given-in-adoption are excluded from recovery for damages under La.Civ.Code arts. 2315.1 and 2315.2.  I also dissent from the majority's holding that children-given-in-adoption are not entitled to pursue survival and wrongful death actions for their half-siblings.  They are most certainly entitled to bring such actions in the absence of a surviving "spouse, child, or parent." La.Civ.Code art. 2315.1(A)(3); La.Civ.Code art. 2315.2(A)(2); and *Gibbs*, 927 So.2d at 1139-40. *See also* La.Civ.Code art. 199.

I concur with the majority's finding that Raymond and Donna Kelly, as legal custodians of the minor child Vera Cheyenne, enjoy no right of action arising from the minor child's death. Though their loss may indeed be grievous they are not among the named beneficiaries permitted recovery in La.Civ.Code art. 2315.1 and 2315.2.  I also concur with the majority's finding that Richard Stewart, Sr. and Vera

17

Stewart are precluded from bringing either a survival or wrongful death action arising out of Stewart Jr.'s death, for the reason that he is survived by both a spouse and children. I further concur with the majority's finding that the case must be remanded as to Brandie Hardie because, as the majority finds, she is an indispensable party who must be joined, cited, served with notice and accorded the right to be heard. However, I disagree that a finding that Hardie abandoned her children would entitle the Stewarts to make a claim because I believe the decedent's surviving children-given-in-adoption have a right to recover for the deaths of their half-siblings and they prime any claim by the Stewarts.

I additionally concur with the majority's finding that the Succession of Richard Stewart, Jr. has no right to assert a wrongful death claim under the provisions of La.Civ.Code art. 2315.2. As the majority points out, the Succession is not one of the legislatively recognized beneficiaries permitted recovery. The decedent enjoyed no right to this type of recovery as it speaks only to a loss suffered by others. I also concur with the majority's finding that the Succession of Richard Stewart, Jr. is precluded from asserting a survival action but for the additional reason that the surviving children-given-in-adoption, as well as the surviving spouse, preclude the succession's ability to make a claim.

For the reasons stated, I respectfully concur in part and dissent in part.

**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**No. 17-809**
**KHRISTY GOINS RISMILLER, TUTRIX FOR DANIEL EDWARD GOINS**
**VERSUS**
**GEMINI INSURANCE COMPANY, ET AL.**

**CW**
**No. 17-811**
**DAVID WATTS**
**VERSUS**
**MARK GORDON, ET AL.**

**CW**
**No. 17-812**
**SUCCESSION OF RICHARD STEWART, JR., ET AL.**
**VERSUS**
**MARK ISIAH GORDON, ET AL.**

Conery, J., concurs in part and dissents in part for reasons assigned by Judges Savoie and Cooks and for the following additional reasons.

When James Stewart, Jr. was killed in an automobile accident, along with his two minor children George and Vera Cheyenne Stewart, he was survived by his wife, Lisa Stewart, and his two adult children, Daniel Goins and David Watts.[1]

Louisiana Civil Code Article 2315.1 and 2315.2 have been interpreted as "sui generis" and govern the hierarchy of who may recover in a survival and wrongful death action, respectively, against the tortfeasor defendants in this case and their insurance carriers. *See Juneau v. State Ex Rel. Department of Health and Hospitals*, 15-1382 (La.App. 1 Cir. 7/7/16), 197 So.3d 398, *writ denied*, 16-1490 (La.

---

[1] Daniel Goins has a tutrix, Kristi Goins Rismiller, who filed suit on his behalf in docket 17-809. David Watts filed suit on his own behalf in docket 17-811. Daniel Goins and David Watts are the biological children of Richard Stewart, Jr. and are the half-brothers of the minors George Stewart and Vera Cheyenne Stewart, whose mother, Brandi Hardie, is not currently a party. Daniel and David were adopted by others but are each claiming survival and wrongful death damages as a result of the death of their biological father, Richard Stewart, Jr. and their biological minor half-siblings, George and Vera Cheyenne Stewart. Richard Stewart, Sr. and his wife, Vera Stewart, are suing for the wrongful death of their son, Richard, Jr., and their minor grandchildren, George and Vera Cheyenne, and are joined in their suit by the Succession of Richard Stewart, Jr. in docket 17-812. All suits have been consolidated, but the majority has issued separate opinions in each.

11/15/16), 209 So.3d 781.  Both articles provide that where there is a surviving spouse and child or children, they are the first in the hierarchy of persons entitled to recover.  *See* La.Civ.Code art. 2315.1 and 2315.2.  There is no dispute that Lisa Stewart, the lawful wife of James Stewart, Jr., and his two biological adult sons Daniel Goins and David Watts, survived James Stewart, Jr..  There is nothing in the plain wording of the civil code articles in question that would suggest that if Daniel Goins and David Watts were adopted by another, they would no longer be "children" or "brother" within the meaning of the two articles in question.

This case then hinges on the words in La.Civ.Code arts. 2315.1 and 2315.2, "except as otherwise provided by law."  The majority cites La.Civ.Code art. 199 as the law that precludes recovery by Daniel Goins and David Watts.  That article states:

> Upon adoption, the adopting parent becomes the parent of the child for all purposes and the filiation between the child and his legal parent is terminated, **except as otherwise provided by law.**  The adopted child and his descendants retain the right to inherit from his former legal parent and the relatives of that parent.

(Emphasis added).

The majority reasons that because Richard Stewart Jr.'s "filiation" to Daniel Goins and David Watts was terminated by adoption, they cannot be considered "children" for purposes of La.Civ.Code arts. 2315.1(A) and 2315.2(A).  However, La.Civ.Code art. 199 also has the admonition "except as otherwise provided by law".  Judges Cooks and Savoie in dissent propose that since La.Civ.Code arts. 2315.1 and 2315.2 do not in any way restrict the term "children" or "brothers," in accordance with U.S. Supreme Court decisions and our Louisiana Supreme Court decisions cited in their opinions, neither should we.  I agree.

2

It is settled law that recovery under La.Civ.Code arts. 2315.1 and 2315.2 is "sui generis" and not dependent on any other statute or codal article. Those articles do not define or limit the term "children" or "brothers." *See Juneau*, 197 So.3d 398. The legislature did not limit the recovery to exclude children who have been adopted and half-brothers, and we should not judicially add an exception. I believe Judges Cooks and Savoie have correctly set forth the law and appropriate result in this case and I respectfully join their concurrences/dissents.

To the extent that this decision conflicts with the interpretation expressed by a panel of our court in *Domingue v. Carencro Nursing Home, Inc.*, 520 So.2d 996 (La.App. 3 Cir.), *writ denied*, 522 So.2d 565 (La.1988), I would offer that under our civilian system we are not bound by a prior decision of another panel of our court, or any other appellate court decision. *Doerr v. Mobil Oil Corp.*, 00-947 (La. 12/19/00), 774 So.2d 119, *reh'g granted on other grounds*, 00–947 (La. 3/16/01), 782 So.2d 573.

As Judges Cooks and Savoie point out in their dissents, to issue a ruling preventing adopted children from filing a wrongful death claim would appear to be unconstitutional based on the prevailing jurisprudence cited in their opinions. We need not and I do not reach that conclusion here. Based strictly on statutory interpretation, La.Civ.Code arts. 2315.1 and 2315.2 do not limit the term "children" or "brothers" in any way, and in my view include as beneficiaries Daniel Goins and David Watts, the biological children of the decedent, Richard Stewart, Jr., who have been adopted by others.

The case of *Ledet v. State, Dep't of Health and Human Res.*, 465 So.2d 98 (La.App. 4 Cir.), *writ denied*, 468 So.2d 1211 (La.1985), is instructive on this issue. The court in *Ledet* specifically held that since biological half-brothers were not

excluded in the definitions of the term "brothers" in La.Civ.Code arts. 2315.1 and 2315.2, the ordinary meaning of the word "brother" would include half-brothers, pursuant to La.Civ.Code art. 11.[2] The fact that Daniel Goins and David Watts were adopted does not mean that they are no longer the biological children of their father as well as the biological half-brothers of the minors, George Stewart and Vera Cheyenne Stewart.

Louisiana Civil Code Articles 2315.1 and 2315.2 use the generic word "children" and "brothers" without exceptions, and we are not authorized to judicially create an exception to exclude biological children or half-siblings who have been adopted by another. *See* La.Civ.Code art. 9.[3] It will be up to the plaintiffs to prove the extent of their relationship with their biological father and half-siblings and the amount of their loss, and they should be given an opportunity to do so.

I also agree with Judges Cooks and Savoie's dissents that if, on remand, Brandi Hardie is found to have abandoned her biological minor children, George Stewart and Vera Cheyenne Stewart, pursuant to La.Ch.Code art. 1015(5)[4], the next in line to sue for their wrongful deaths, would be their biological half-brothers, Daniel Goins and David Watts.

_____

[2] La.Civ.Code art. 11 provides, "[t]he words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter."

[3] Louisiana Civil Code Article 9 states, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."

[4] According to La.Ch.Code art. 1015(5), "[t]he grounds for termination of parental rights are:
(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.
(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months."

The majority and the dissents all recognize that if either case disposition becomes final, there are some who may have had closer relations with the deceased than those lawfully allowed to recover. We understand their loss but are duty bound to apply the law as written. The hierarchy of beneficiaries allowed to recover is plainly written and should be applied as written. *Blanchard v. Tinsman*, 83-451 (La.App. 3 Cir. 2/1/1984) 445 So.2d 149, *writ denied*, 448 So.2d 113 (La.1984).

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

17-812 c/w 17-809 c/w 17-811


SUCCESSION OF RICHARD STEWART, JR., ET. AL.

VERSUS

MARK ISAIAH GORDON, ET. AL.


**SAVOIE, J., concurs in part, dissents in part, and assigns the following reasons:**

I agree with the majority's conclusion that the trial court erred in denying the Defendants' exceptions as to (1) the wrongful death and survival actions filed by the Kelly's and (2) to the Succession's wrongful death actions. However, I disagree with the analysis and/or the conclusions with respect to the remainder of the majority's opinon as follows:

## Claims Asserted by the Stewarts

### A. *Wrongful Death and Survival Action Arising out of Mr. Stewart's Death*

I disagree with the majority's conclusion that Mr. Goins and Mr. Watts, who are Mr. Stewart's biological children, do not have a right to assert survival and wrongful death actions arising out of their father's death because they were given up for adoption. Rather, for the following reasons, I would find that they are "children of the deceased," as contemplated by the code articles at issue, and, as a result, have a right to assert a wrongful death and survival action arising out of their father's death.

The Louisiana Civil Code is instructive on the interpretation of laws. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9. "The words

of a law must be given their **generally prevailing meaning**." La.Civ.Code art. 11 (emphasis added). "Laws on the same subject matter must be interpreted in reference to each other." La.Civ.Code. art. 13.

Therefore, the first consideration in interpreting La.Civ.Code arts. 2315.1(A)(1) and 2315.2(A)(1) is the language of the code articles themselves. Specifically at issue is the phrase "child or children of the deceased" used therein. A common, or generally prevailing meaning, of this phrase would clearly be a deceased's biological child or children. *See Hunt v. New Orleans Ry. & Light Co.*, 73 So. 667 (La.1916). *See also*, *Jenkins v. Mangano,* 00-790, p. 3 (La. 11/28/00), 774 So.2d 101, 103, where the Louisiana Supreme Court recognized "that the critical requirement for classification of a person as a child under Article 2315.2 is the biological relationship between the tort victim and the child." While both La.Civ.Code arts. 2315.1 and 2315.2 include a paragraph that expressly *expands* the term "child or children of the deceased" to include non-biological children that the deceased adopted, there is no language in the code articles that *narrows* the term to *exclude* a deceased's biological children by reason of adoption or otherwise.

The next consideration is whether there are any laws on the same subject matter that are helpful in interpreting the articles' use of the phrase "children of the deceased" that would to lead to the exclusion of a deceased's biological children given up for adoption from that definition.

Defendants-Applicants refer to La.Civ.Code art. 199, which states that:

> Upon adoption, the adopting parent becomes the parent of the child for all purposes and the filiation between the child and his legal parent is terminated, except as otherwise provided by law. The adopted child and his descendants retain the right to inherit from his former legal parent and the relatives of that parent.

"Filiation is the legal relationship between a parent and child." La.Civ.Code art. 178. Defendants-Applicants suggest that, because Mr. Goins' and Mr. Watts' filiation to Mr. Stewart was terminated by virtue of their adoption, they should not

2

be considered "children of Mr. Stewart" for purposes of the wrongful death and surivial code articles. I disagree.

There is no indication within the language of La.Civ.Code arts. 2315.1 and 2315.2 that one must be filiated to the deceased to be considered a "child or children of the deceased." Rather, those code articles suggest that a deceased's biological children, *as well as* those who have been filiated to the deceased by adoption, are considered children of the deceased. If filiation were required for one to be considered a deceased's "child" for purposes of La.Civ.Code arts. 2315.1 and 2315.2, then Paragraph (D) of those articles, which expands "child" to include the deceased's adopted child, would have no independent meaning.

In addition, the Louisiana Supreme Court has recognized that the code articles governing survival and wrongful death actions are sui generis and that it is improper to look beyond the language of the code articles when interpreting their meaning.

Specifically, the supreme court stated in *Levy v. State Through Charity Hosp. of La.*, 216 So.2d 818, 819 (La.1968) (emphasis added):[1]

> That these rights are wholly the creatures of the Legislature is recognized historically and jurisprudentially. The statute to this extent is **sui generis and is not a law** of marriage, **of parent and child,** or of inheritance, **nor does it conform to the civil law concepts**. *Vaughan v. Dalton-Lard Lumber Co.*, 119 La. 61 [La.1907], 43 So. 926. It is special legislation providing for the survival of a right of action in favor of named classes of survivors and also creating a cause of action in favor of those same classes of persons for wrongful death. *Walton v. Booth*, 34 La.Ann. 913 [(La.1882)].

*Levy*, therefore, suggests that there is no reason to look beyond the language of the survival and wrongful death code articles in interpreting "children of the deceased."

---

[1] At issue in *Levy* was whether the deceased's illegitimate children were children with a right to assert wrongful death and survival claims. In *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509 (1968), the United States Supreme Court, referring to equal protection concepts, reversed the Louisiana courts' interpretation that a deceased's "child," as that term was utilized by then-applicable La.Civ.Code art. 2315, did not include a deceased's illegitimate children. Thereafter, the Louisiana Supreme Court rendered an opinion in accordance with the United States Supreme Court's decision. *Levy*, 216 So.2d 818.

3

Since the articles do not refer to filiation concepts to *exclude* those who are otherwise named as having rights of action, filiation is irrelevant to the analysis.

Similarly, in *Hunt v. New Orleans Ry. & Light Co.*, 73 So. 667, the Louisiana Supreme Court declined to apply the definition of children set forth in the civil code's general definitions article[2] when interpreting the applicable survival action article's use of the term "children."[3] The *Hunt* court concluded that the ordinary meaning of the term "children," that is, descendants in the first degree, was applicable to the survival action article, stating:

> We may add to the foregoing that, as we understand the matter, it is only when the word 'children,' as used in the Civil Code, is not particularly defined, or does not, when construed with reference to the body of the law and to the immediate connection in which it is used, convey another meaning (in which case it requires no definition), that the definition given in article 3556 may be invoked.
>
> . . . .
>
> Our conclusion is that the word 'children,' whether as used in the Civil Code or elsewhere, ordinarily applies to a distinct class of persons . . . , and as used in the Code, that the word is to be so construed, with reference to the body of that law and to the immediate connection in which it is used, to give it the meaning plainly intended, rather than such a meaning as might be deduced by proceeding upon the theory that the only part of the Code to be considered is the definition contained in art. 3556.

*Id.* at 668.[4]

---

[2] Louisiana Civil Code Article 3556 was the general definitions article at issue in *Hunt*, and it is a predecessor to the current general definitions article, La.Civ.Code art. 3506. Louisiana Civil Code article 3506 currently states:

> Whenever the terms of law, employed in this Code, have not been particularly defined therein, they shall be understood as follows:
> . . . .
> (8) Children. Under this name are included those persons born of the marriage, those adopted, and those whose filiation to the parent has been established in the manner provided by law, as well as descendants of them in the direct line.

[3] At the time of *Hunt*, La.Civ.Code. article 2315 provided the "minor children or widow of the deceased, or either of them," with a right of action arising out of the deceased's death.

[4] At issue in *Hunt,* was whether a deceased's grandchildren had a right of action to assert wrongful death and survival claims.

4

It is also noteworthy that limiting the interpretation of those who have rights to assert wrongful death and survival actions to the express language of the code articles themselves would not necessarily result in providing a parent, who gave a biological child up for adoption, with a valid right or cause of action arising out of that child's death. The code articles adequately address those circumstances by providing: "[A] father or mother who has abandoned the deceased during his minority is deemed not to have survived him." La.Civ.Code. arts. 2315.1(E) and 2315.2 (E).

Defendants-Applicants rely on *Simmons v. Brooks*, 342 So.2d 236 (La.App. 4 Cir. 1977), in suggesting that a parent's biological children who were given up for adoption do not have a right to assert wrongful death and/or survival actions arising out of their biological parent's death. In *Simmons, Id.* at 237, the appellate court found no such right of action stating: "[La.Civ.Code art.] 2315 cannot be isolated from other sections of the Revised Civil Code in interpreting its meaning. . . . Therefore, we consider the effect of [La.Civ.Code art.] 214, which deals with the rights of an adopted child, on the provisions of LSA-R.C.C. Article 2315."

At the time of *Simmons*, La.Civ.Code art. 214 stated that "the adopted person and his lawful descendants are relieved of all of their legal duties and [d]ivested of all their legal rights with regard to the blood parent or parents and other blood relatives, [e]xcept the right of inheritance from them." *See Simmons,* 342 So.2d at 237. The *Simmons* court went on to find that survival and wrongful death actions were not inheritance rights, and therefore, upon adoption, the children were divested of any right to assert wrongful death and survival actions.

I disagree with *Simmons* as its analysis is based on its conclusion that the survival and wrongful death code articles cannot be isolated from other provisions of the code. This analysis is inconsistent with the Louisiana Supreme Court's

5

indication in *Levy*, 216 So.2d 818, that the wrongful death and survival code article(s) are sui generis.

The Defendants-Applicants, and the majority herein, also rely on *Domingue v. Carencro Nursing Home, Inc.*, 520 So.2d 996 (La.App. 3 Cir. 1987), *writ denied*, 522 So.2d 565 (La.1988), wherein this court found that a deceased's child given up by adoption had no right of action to assert a wrongful death or survival claim. The *Domingue* court reasoned:

> We agree with the defendants' argument [that] *Simmons*, 342 So.2d 236, involved facts virtually identical to the case at hand. . . . The court stated that Article 2315 must be read in conjunction with other sections of the Civil Code in order to assist in its interpretation. The court then looked to La.C.C. art. 214[.]

*Id.* at 997. However, given my conclusion that *Simmons,* 342 So.2d 236, is inconsistent with *Levy*, 216 So.2d 818, I would also decline to follow *Domingue*, 520 So.2d 996, inasmuch as it relied on *Simmons*.

The *Domingue* court also found relevant to its analysis that the article governing wrongful death and survival actions prior to its amendment in 1960 recognized that the term children included adopted children and children given in the adoption, but that following the 1960 amendment, the language "given in adoption" was removed. However, I disagree with the *Domingue* court's suggestion that the 1960 amendment's omission of "given in adoption" was an indication that those children were meant to be excluded from the definition of "children of the deceased."

Prior to the 1960 amendment, La.Civ.Code art. 2315 stated (emphasis added):

> Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it; **the right of his action shall survive in case of death in favor of the children, including adopted children and children given in adoption, or spouse of the deceased, or either of them**, and in default of these in favor of the surviving father and mother or either of them, and in default of any of the above persons, then in favor of the surviving blood brothers and sisters, or either of them, for the space of one year from the death. However, should the deceased leave a surviving spouse, together with minor children, the

6

right of action shall accrue to both the surviving spouse and the minor children. The right of action shall accrue to the major children only in those cases where there is no surviving spouse or minor child or children.

If the above right of action exists in favor of an adopted person, it shall survive in case of death in favor of the children or spouse of the deceased, or either of them, and in default of these in favor of the surviving adoptive parents, or either of them, for the space of one year from the death. However, this right of action shall survive in favor of the blood parent or parents to the exclusion of the adoptive parent or parents when at the time of the adoption the adopted was a major, or emancipated minor whose adoption was effected without the consent of the blood parent or parents evidenced in the act of adoption. In default of these, it shall survive in favor of the surviving blood brothers and sisters of the adopted person, or either of them, for the space of one year from the death.

The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child or husband or wife or brothers or sisters or adoptive parent, or parents, or adopted person, as the case may be.

*See* 1948 Acts, No. 333.

The 1960 amendment to La.Civ.Code art. 2315 revised the article to state:

Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

The right to recover damages to property caused by an offense or quasi offense is a property right which, on the death of the obligee, is inherited by his legal, instituted, or irregular heirs, subject to the community rights of the surviving spouse.

The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased in favor of: (1) the surviving spouse and child or children of the deceased, or either such spouse or such child or children; (2) the surviving father and mother of the deceased, or either of them, if he left no spouse or child surviving; and (3) the surviving brothers and sisters of the deceased, or any of them, if he left no spouse, child, or parent surviving. The survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased. A right to recover damages under the provisions of this paragraph is a property right which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.

As used in this article, the words 'child', 'brother', 'sister', 'father', and 'mother' include a child, brother, sister, father and mother, by adoption, respectively.

7

1960 Acts, No. 30, §1.

A Louisiana Law Review article following the 1960 amendment, which discusses the purpose of the 1960 amendment, suggests that the revisions to the language defining the classes of beneficiaries who have rights to assert wrongful death claims were intended to simplify the description of those classes, rather than substantively change them:

> Article 2315 was amended at the last session of the legislature so as to effect one important change and **also to simplify and make clearer the classes of persons designated as claimants or beneficiaries**. Formerly, the death of a beneficiary of a wrongful death claim prior to final judgment served to extinguish the claim completely. The right of the beneficiary is by the amendment designated a "property right, which, on the death of the survivor in whose favor the right of action survived, is inherited by his legal, instituted, or irregular heirs, whether suit has been instituted thereon by the survivor or not.

Wex S. Malone, *Torts*, 21 La.L.Rev. 78, 81-82 (1960) (emphasis added). As suggested by this article, the only substantive change to the law was the extension of a beneficiary's right to assert a wrongful death claim to certain heirs upon the beneficiary's death.

Therefore, it is my opinion that the 1960 amendment to La.Civ.Code art. 2315 did not eliminate the right of a child given in adoption to assert a claim arising out of his biological parent's death; rather, it simplified the pre-amendment phrase "the right of his action shall survive in case of death in favor of the children, including adopted children and children given in adoption, or spouse of the deceased, or either of them" by (1) replacing it with "child or children of the deceased," which necessarily includes a biological child given in adoption, and (2) adding a paragraph that expands the term "child" to include a child that the deceased adopted.

Similarly, I would decline to follow *Hernandez v. State, DOTD,* 02-162, 02-163 (La.App. 4 Cir. 10/16/02), 841 So.2d 808, *writs denied*, 03-261, 03-307 (La. 4/25/03), 842 So.2d 399, which is relied upon by the Defendants-Applicants and the

majority. In *Hernandez,* the deceased's biological daughter filed a wrongful death and survival action arising out the deceased's death. At the age of eighteen, the daughter, along with her great aunt, executed a Notarial Act, whereby the aunt adopted the daughter. In recognizing that the adopted daughter had no right of action, the *Hernandez* court cited to *Simmons*, 342 So.2d. 236, and *Domingue,* 520 So.2d 996. Because I disagree with *Simmons* and *Domingue* on this issue, I also disagree with *Hernandez* in this regard.[5]

The majority also concludes that the Stewarts have no right of action under La.Civ.Code arts. 2315.1 and 2315.2 arising out Mr. Stewart's death because Mr. Stewart's wife is still alive. I agree with the majority in that respect.

In sum, as to the Stewarts' survival and wrongful death claims arising out of Mr. Stewart's death, I concur with the majority's conclusion that the trial court erred in denying Defendants' exceptions as to their claims. However, I would find that their claims are precluded by Mr. Stewart's biological children, Mr. Watts and Mr. Goins, as well as Mr. Stewart's wife.

**B. The Stewarts' Wrongful Death and Survivial Action Arising out of their Grandchildren's Deaths.**

I agree with the majority's conclusion to remand this matter for the children's mother, Brandie Hardie, to be added as an indispensable party for determination of whether she had abandoned the children as contemplated by La.Civ.Code. arts. 2315.1(E). However, in the event she is found to have abandoned the deceased's children, I would find that Mr. Goins and Mr. Watts, as biological half-siblings of the deceased children, would have the right to assert a wrongful death and survival action arising out of the children's deaths, to the exclusion of the Stewarts. *See Ledet v. State, Dep't of Health and Human Res.*, 465 So.2d 98 (La.App. 4 Cir.), *writ*

---

[5]    Primarily at issue in *Hernandez,* 841 So.2d 808, was whether a declaratory judgment, which was obtained by the daughter after the wrongful death action was initiated, and which nullified the adoption, had any effect on the daughter's right of action.

*denied*, 468 So.2d 1211 (La.1985); and *Gibbs v. Delatte,* 05-821 (La.App. 1 Cir. 12/22/05), 927 So.2d 1131, *writ denied,* 06-198 (La. 4/24/06), 926 So.2d 548. Therefore, I would find that the trial court erred in denying Defendants' exceptions as to the Stewarts' survival and wrongful death claims arising out of their grandchildren's deaths.

### The Succession's Survival Action

I concur with the majority's conclusion that the trial court erred in denying Defendants' exceptions as to the Succession's survival actions arising out of Mr. Stewart's and the children's deaths. However, in my opinion, Mr. Watts and Mr. Goins, who are Mr. Stewart's children, have a right to assert a survival action arising out of Mr. Stewart's death, thereby precluding the Succession's claim. Moreover, in the event the trial court concludes on remand that Brandie Hardie abandoned the deceased children, it is my opinion that Mr. Goins and Mr. Watts, as siblings of the deceased children, have a right to assert a survival action arising out of the children's deaths.

### Conclusion

In sum, I concur with the majority's conclusion to grant Defendants' exceptions as to the Stewarts' survival and wrongful death actions arising out of Mr. Stewart's death. However, I would find that Mr. Watts and Mr. Goins have a right to assert these claims.

I disagree with the majority's conclusion to deny the exceptions as to the Stewarts' claims arising out the minor children's deaths. In my opinion, these claims are precluded by Mr. Watts and Mr. Goins in the event that the children's mother, Ms. Hardie, is deemed on remand to have abandoned the children. Therefore, I would grant Defendants' exceptions in this regard.

I further concur in the majority's conclusion to grant Defendants' exceptions related to the Succession's survival action. However, I would find that Mr. Watts

10

and Mr. Goins have a right to assert a survival action arising out Mr. Stewart's death. They also have a right to assert a survival action arising out of the children's death in the event Ms. Hardie is deemed on remand to have abandoned the children.